552 A.2d 1096

**COMMONWEALTH of Pennsylvania**

**v.**

**Marc Jay KOZINN, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 7, 1988.

Filed Jan. 12, 1989.

Norman E. Greenspan, Philadelphia, for appellant.

Before WIEAND, McEWEN and MELINSON, JJ.

McEWEN, Judge:

We here consider an appeal from the judgment of sentence to pay a fine of $500, imposed after a jury determined that appellant was guilty of two counts of harassment by communication or address, 18 Pa.C.S. § 5504(a). We affirm.

The distinguished Judge Michael A. Georgelis has, in his able opinion, aptly summarized the evidence:

On November 16, 1986, at 8:20 p.m., seventeen year old Melissa Nell (Melissa) and her mother, Shirley Fasig, each picked up a telephone in order to answer an incoming call. The caller asked for Melissa Nell, and, accordingly, Melissa stayed on the line while her mother hung up her telephone. The caller identified himself as Craig Williams (or as the Defendant testified, Craig Jacobs). The Defendant testified that he selected Miss Nell's telephone number at random out of the telephone directory. Hereafter, Melissa's testimony and the Defendant's testimony conflict somewhat; nevertheless, the rest of the conversation continued generally in the following manner. The Defendant told Melissa that he was conducting a lingerie survey and asked several questions pertaining to the survey. The conversation then turned to the Defendant's offer to perform a body massage on Miss Nell.

The Defendant described an activity in which both he and Melissa could be nude and in which she could massage him as well. Melissa testified that the Defendant then asked her if she ever had intercourse and he proceeded to describe an illicit sexual activity.

The Defendant indicated that he would like to make an appointment with Melissa for eight o'clock that evening. Although Melissa replied that she had to work that evening, the Defendant, undeterred, suggested that he would telephone before coming over in order to make sure she was home.

The Defendant called Melissa that evening at 7:55 p.m. Melissa testified that she answered the telephone and when she recognized the Defendant's voice, she replied that she was Melissa's sister. She further testified that she misrepresented her identity because she was "scared". She stated that Melissa was not at home. The Defendant ended the conversation by indicating that he would come over and wait for her.

Shortly after the telephone call, Melissa heard a knock on the door, which prompted her to telephone her brother, Larry Nell, for help. Larry and her other brother, Fred Nell, arrived at the home at approximately the same time and noticed the Defendant standing on the front porch of the house. While Fred talked to the Defendant on the porch, Larry entered the house from the back door and discussed the situation with his sister. Larry returned to the porch and told the Defendant that his sister was not home, and Defendant eventually left. Melissa's mother was telephoned concerning the incident, and she, subsequently, called the police.

The Defendant again telephoned the residence November 19, 1986 and asked for Melissa. Ms. Fasig, who was concerned for Melissa's safety and wanted to see the Defendant apprehended, posed as Melissa. The Defendant again asked questions pertaining to a massage and again related that both he and Melissa could be nude during the massage. He and Ms. Fasig made an appoint-

ment to meet at 7:30 p.m. on November 24, 1986 at the Fasig/Nell residence.

Ms. Fasig contacted the police, and Trooper Patricia Guth of the Pennsylvania State Police was assigned to pose as Melissa at the November 24 meeting. The Defendant arrived at the residence on November 24 and was met by Trooper Guth, whereupon they had a conversation on the front porch. The Defendant again identified the type of activity as sexual in nature and asked specific questions regarding the possibility of engaging in intercourse and other sexual acts. Trooper Guth convinced the Defendant to leave by alleging that Melissa's mother was in the house. Defendant was arrested shortly thereafter.

We are summoned in this appeal to interpret the statutory phrase "with intent to harass". While appellant presents five distinct claims, each is but a reecho of the fundamental thrust of this appeal, namely, that there was not sufficient evidence to find appellant guilty of the crime of harassment by communication which the legislature has defined as follows:

§ 5504. **Harassment by communication or address**

(a) **Offense defined.**—A person commits a misdemeanor of the third degree if, with intent to harass another, he:

(1) makes a telephone call without intent of legitimate communication or addresses to or about such other person any lewd, lascivious or indecent words or language or anonymously telephones another person repeatedly; or

(2) makes repeated communications anonymously or at extremely inconvenient hours, or in offensively coarse language.

18 Pa.C.S. § 5504(a).

Appellant, while conceding that he made the two calls, urges that the prosecution failed to prove that the calls were made "with intent to harass another". Thus, our disposition of this appeal, as well as resolution of the perplexing issue presented,[1] rests solely upon the interpre-

1. Appellant also asserts that the trial court erred in permitting the irrelevant and prejudicial testimony of Trooper Patricia Guth concern-

tation provided the phrase "with intent to harass". Appellant disclaims any intent to harass, and, though he acknowledges that his "solicitations were sexually provocative", he asserts that he merely sought to propose a sexual encounter with the listener. Appellant argues that since the listener could have terminated the conversation at any point, but did not do so, the conversation did not harass the listener. This argument is flawed since, implicit in the very expression of the argument, is an acknowledgement that the nature of the discussion might well be objectionable. There is a variation to this argument, namely, that the caller's lack of intention to harass is demonstrated by the procedure he employed, namely, he commenced the conversation with assertedly innocuous, although suggestive inquiries, and gradually proceeded, creep by creep, to explicitly sexual discussion and requests. This proposition is likewise self defeating since it concedes an awareness that the discussion might be offensive.

The law does not permit an actor to avoid the consequences of his conduct by disclaimers of an intent to injure or harm or offend or "harass". Rather, the law obliges the factfinder to rely for the discernment of intent upon demonstrative manifestation of that intent. Every action produces a reaction, every act has an effect. The nature or essence of an act is most often, and usually convincingly, determined by its effect or result. When an individual *knows or should know* the consequences of his act, he is presumed to be aware of the nature of his act, and his decision to perform the act is a manifestation of his intent to effect the results of his act. The assigned task of the jury was to determine whether appellant *knew or should have known* that an effect of his call would be to harass the listener. The jury by its verdict of guilty manifested its conclusion that appellant *knew or should have known* that his call would harass his listener. Our role as an appellate

ing the meeting between the trooper and appellant in the Fasig home five days after the second call. Since the trial judge has adequately addressed and correctly rejected this claim, no purpose would be served by further discussion of this contention.

tribunal is, of course, rather more restricted since we are to but review the record and determine whether there is sufficient evidence to support the verdict of the jury. The trial court has already considered this very question and concluded that there was sufficient evidence upon which the jury could base a verdict of guilty. We agree.

The record reflects a panoply of events and circumstances which provided an abundant basis for the conclusion of the jury that appellant knew or should have known that his call would harass his listener, including:

(1) The general subject he addressed in the call was of so personal and private a nature that a reasonable individual would discuss such a general subject only with a family member, or a dear or intimate friend.

(2) The specific details toward which he directed his discussion were of such a nature that a reasonable individual would discuss such details only with a spouse, a dear or intimate friend, or a physician.[2]

(3) The call (i) was made to a private home, as a result of appellant's simple random selection to a place where all of the residents were unknown to appellant, and (ii) was not made to a number or place at which appellant had previously engaged in such discussion or had a reasonable basis to conclude that the listeners would not be harassed by such a discussion.

(4) Appellant did not identify himself but instead used a false name during both calls.

(5) The claim of appellant that he made the call for the purpose of attempting a legitimate sexual encounter is a condemning admission since appellant knew or should have known that a proposal of sexual encounter would in itself have been so objectionable to an unknown listener as to compose harassment.

(5) Appellant's claim of legitimacy of purpose in attempting a consensual, sexual encounter is belied by the measured tour of sexual subjects which the discussion fol-

2. Appellant is a physician but he does not assert, nor could he, that he made the call for any professional purpose.

lowed before appellant proposed an actual encounter, permitting the jury to infer that appellant sought gratification from the discussion itself.

No one would argue that appellant would be free to have touched his listener in a sexually obvious fashion in an effort to determine whether she would have engaged in a consensual, sexual encounter. Appellant would not have been permitted such a touching since he knew or should have known that such contact would offend or harass the "reasonable" person. Similarly, appellant knew or should have known that his sexually explicit telephone statements would offend or harass the "reasonable" person.

What we here hold then is that a jury may infer an intent to harass from an attempt to engage in sexually explicit communication with another individual, without the prior express or implicit consent of the other individual. Since there was an ample evidentiary basis for a finding that appellant had an intention to harass, any claim of insufficiency must be rejected.

JUDGMENT OF SENTENCE AFFIRMED.

WIEAND, J., concurs in the result.