684 A.2d 171

COMMONWEALTH of Pennsylvania

v.

Ernest HENDRICKSON, Appellant.

COMMONWEALTH of Pennsylvania

v.

Ernest S. HENDRICKSON, Appellant.

COMMONWEALTH of Pennsylvania

v.

Ernest Stuart HENDRICKSON, Appellant.

Superior Court of Pennsylvania.

Argued April 17, 1996.

Filed Oct. 15, 1996.

534

Carl M. Janavitz, Pittsburgh, for appellant.

Sally Kaye, Assistant District Attorney, Pittsburgh, for Com., appellee.

Before HUDOCK, FORD ELLIOTT and BROSKY, JJ.

FORD ELLIOTT, Judge:

In this appeal, we are asked to decide whether Pennsylvania's harassment by communication or address statute, 18 Pa.C.S.A. § 5504, is unconstitutionally vague and overbroad in violation of the First and Fourteenth Amendments to the United States Constitution and Article I, Section 7 of the Pennsylvania Constitution.[1] We are also asked to decide

---

1. While appellant raises the Pennsylvania constitutional issue in his "Statement of Questions Involved," his "Argument" section is completely lacking in discussion of the issue. Appellant neither cites cases in support of his claim, nor relates the cases to his claim. *See Commonwealth v. White*, 543 Pa. 45, 49–51, 669 A.2d 896, 899 (1995) (reaffirming the importance of the analysis articulated by the supreme court in *Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887 (1991), vis-a-vis state constitutional claims, but addressing a state constitutional claim where appellant raised a claim under the Pennsylvania Constitution, cited cases in support of his claim, and related the cases to the claim). As a result, we decline to address the issue. Were we to

whether the District Attorney of Allegheny County had jurisdiction to prosecute appellant under 18 Pa.C.S.A. § 5504(a)(2) when the facsimile transmissions (faxes) forming the subject of the crime were sent from appellant's office in Westmoreland County, even though they were received by complainants in Allegheny County. For the reasons that follow, we affirm.

A brief summary of the facts follows. In late 1991 and early 1992, appellant sent a quantity of different faxes to approximately forty people at their offices in Allegheny County. Many of these faxes were sent repeatedly, so that, in total, approximately 400 faxes were received by the forty complainants. (Notes of testimony, 9/12–21/94 at 23.) Among those targeted to receive the fax transmissions were members of the faculty and staff of the University of Pittsburgh, a temporary employment agency staffed only by African Americans at the time of the incidents at issue, the NAACP[2] headquarters, Lynn Swann's[3] business office, and various law firms and other businesses. The faxes contained inflammatory racial and ethnic commentary, as well as derogatory commentary concerning the medical and legal professions. (*Id.* at 44–592.) The faxes were unsolicited, and were sent anonymously. (*Id.*) All of the complainants testified that the fax transmissions disrupted their offices to some degree, and caused emotions ranging from consternation to fear. (*Id.* at, *inter alia,* 101, 247–48, 268, 282–83, 342–43, 375–76, 412–416, 428–430, 459–62, 475–77, 494, 534–35, 543–44, 559, 576–77.)

Following a police investigation which led to his arrest, appellant was charged with forty-one (41) counts each of harassment by communication or address in violation of 18 Pa.C.S.A. § 5504(a)(1) and (a)(2), thirty-six (36) each of which went to the jury; and five (5) counts of ethnic intimidation, in violation of 18 Pa.C.S.A. § 2710. (Notes of testimony, 9/12–

address it, however, we would find no merit, convinced as we are by the Commonwealth's exhaustive analysis of Pennsylvania jurisprudence in this area in *its* brief. *See* Commonwealth brief at 24–33.

2. National Association for the Advancement of Colored People.

3. Mr. Swann, also an African American, is a former professional football player for the Pittsburgh Steelers.

21/94 at 983.) Appellant was tried by a jury and found guilty of the 36 counts of harassment by communication or address, pursuant to 18 Pa.C.S.A. § 5504(a)(2), and not guilty of the remaining counts. (*Id.* at 989–96). As noted *supra,* appellant challenges the constitutionality of the harassment by communication or address statute in its entirety, both on its face and as applied to him. That statute provides:

**§ 5504. Harassment by communication or address**

**(a) Offense defined.**—A person commits a misdemeanor of the third degree if, with intent to harass another, he:

(1) makes a telephone call without intent of legitimate communication or addresses to or about such other person any lewd, lascivious or indecent words or language or anonymously telephones another person repeatedly; or

(2) makes repeated communications anonymously or at extremely inconvenient hours, or in offensively coarse language.

**(b) Venue.**—Any offense committed under paragraph (a)(1) of this section may be deemed to have been committed at either the place at which the telephone call or calls were made or at the place where the telephone call or calls were received.

18 Pa.C.S.A. § 5504.

Appellant raises two constitutional challenges; first, that the statute is vague, and second, that the statute is overbroad. No Pennsylvania appellate court has to date addressed the constitutionality of § 5504. We note, however, that, " '[A] legislative enactment enjoys a presumption in favor of its constitutionality and will not be declared unconstitutional unless it clearly, palpably and plainly violates the Constitution. All doubts are to be resolved in favor of a finding of constitutionality.' " *Commonwealth v. Walker,* 298 Pa.Super. 387, 393, 444 A.2d 1228, 1231 (1982), *quoting Parker v. Children's Hospital of Philadelphia,* 483 Pa. 106, 116, 394 A.2d 932, 937 (1978). *See also Estate of Cox,* 327 Pa.Super. 479, 483–85, 476 A.2d 367, 370 (1984). With that standard before us, we set forth a brief overview of free speech jurisprudence.

■ Any analysis of First Amendment protections must begin with the following observations made by the Supreme Court in 1942:

[I]t is well understood that the right of free speech is not absolute at all times and under all circumstances. There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which has never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words—those which by their very utterance inflict injury or tend to incite an immediate breach of the peace. It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.

*Chaplinsky v. State of New Hampshire,* 315 U.S. 568, 571–72, 62 S.Ct. 766, 769, 86 L.Ed. 1031 (1942) (footnotes omitted). *Accord, Commonwealth v. Duncan,* 239 Pa.Super. 539, 363 A.2d 803 (1976). This analysis was echoed by the Fifth Circuit Court of Appeals in *Shackelford v. Shirley,* 948 F.2d 935 (5th Cir.1991), in which that court stated:

As speech strays further from the values of persuasion, dialogue and free exchange of ideas the first amendment was designed to protect, and moves toward threats made with specific intent to perform illegal acts, the state has greater latitude to enact statutes that effectively neutralize verbal expression.... Professor Tribe describes the 'public dialogue' values underlying the first amendment as follows:

The notion that some expression may be regulated consistent with the first amendment ... starts with the already familiar proposition that expression has special value only in the context of 'dialogue': communication in which the participants seek to persuade, or are persuaded; communication which is about changing or maintaining beliefs, or taking or refusing to take action on the basis of one's beliefs ... It is not plausible to uphold the right to use

words as projectiles where no exchange of views is involved.

*Shackelford, supra* at 938 (citations omitted), *quoting* L. Tribe, *American Constitutional Law,* § 12–8 at 836–37 (2d ed.1988). It is within this context that we must view the "hate faxes" sent unsolicited by appellant to the offices of individuals who were, because of their race, their religion, or their profession, the subjects of the vituperation contained therein.

In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail. The court should then examine the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, should uphold the challenge only if the enactment is impermissibly vague in all of its applications. A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law.

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494–95, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982) (footnotes omitted). Following this analysis, we turn to appellant's overbreadth issue, and note that appellant was found not guilty as to § 5504(a)(1), but guilty as to § 5504(a)(2). Our first task, then is to determine whether appellant has standing to challenge the overbreadth of the statute. The Supreme Court's analysis in *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973), provides guidance:

[T]he Court has altered its traditional rules of standing to permit—in the First Amendment area—'attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity.' Litigants, therefore, are permitted to challenge a statute not because their own rights of free expression are

violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.

*Id.* at 612, 93 S.Ct. at 2916 (citations omitted). We determine that, under the *Broadrick* rule, appellant has standing to challenge the overbreadth of the Pennsylvania statute.

■ As to the merits of appellant's claim, *Broadrick, supra,* is once again instructive:

It has long been recognized that the First Amendment needs breathing space and that statutes attempting to restrict or burden the exercise of First Amendment rights must be narrowly drawn and represent a considered legislative judgment that a particular mode of expression has to give way to other compelling needs of society.

*Broadrick, supra* at 611–12, 93 S.Ct. at 2915. Hence, in the instant case, the compelling needs of society in preventing harassment of its citizens are to be weighed against the breathing space required under the First Amendment free speech protections. The linchpin of any overbreadth analysis when both speech and conduct are at issue can be found in the *Broadrick* Court's holding that "where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick, supra* at 615, 93 S.Ct. at 2918. Instantly, we have such a case; it was appellant's conduct in repeatedly sending "hate faxes" to people he knew or should have known would feel threatened by their content, and not the content of the faxes itself, which is proscribed by the statute. It is clear that the legislature has a legitimate interest in protecting its citizens from harassment. As the *Broadrick* court opined:

[F]acial overbreadth adjudication is an exception to our traditional rules of practice and ... its function, a limited one at the outset, attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from 'pure speech' toward conduct and that conduct—even if expressive—falls within the scope of otherwise valid crimi-

nal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct. Although such laws, if too broadly worded, may deter protected speech to some unknown extent, there comes a point where that effect—at best a prediction—cannot, with confidence, justify invalidating a statute on its face and so prohibiting a State from enforcing the statute against conduct that is admittedly within its power to proscribe.

*Broadrick, supra* at 615, 93 S.Ct. at 2917–18.

In responding to a similar overbreadth challenge to West Virginia's harassment by telephone statute,[4] the Fourth Circuit Court of Appeals noted, "The government has a strong and legitimate interest in preventing the harassment of individuals." *Thorne v. Bailey,* 846 F.2d 241, 243 (4th Cir.1988), *certiorari denied,* 488 U.S. 984, 109 S.Ct. 538, 102 L.Ed.2d 569 (1988). As the Fourth Circuit observed:

The statute is clearly not a censorial statute, directed at any group or viewpoint. It seeks to protect citizens from harassment in an even-handed and neutral fashion. Indeed, the statute requires no inquiry into the content of the telephone conversation. Moreover, as we noted earlier, West Virginia has a broad, legitimate interest in protecting its citizens from harassment, especially when harassment is accomplished by use of the telephone. In light of the limited application of the overbreadth doctrine in the con-

**4.** The West Virginia statute, codified at W.Va.Code § 61–8–16(a), provided:

(a) It shall be unlawful for any person with intent to harass or abuse another by means of telephone to:

(1) Make any comment, request, suggestion or proposal which is obscene; or

(2) Make a telephone call, whether or not conversation ensues, without disclosing his identity and with intent to harass any person at the called number; or

(3) Make or cause the telephone of another repeatedly or continuously to ring, with intent to harass any person at the called number; or

(4) Make repeated telephone calls, during which conversation ensues, with intent to harass any person at the called number; or

(5) Threaten to commit a crime against any person or property.

*Thorne, supra* at 242 n. 1.

text of criminal laws sought to be applied to constitutionally unprotected conduct, we conclude that the statute is not only constitutional as applied to Thorne, but is also not so broadly worded as to be facially overly broad.

*Thorne, supra* at 244, *citing Broadrick, supra* at 615, 93 S.Ct. at 2917–18 (footnote omitted). In like fashion, while the Pennsylvania statute at issue proscribes some specific types of language, *it does so solely when the use of that language is intended to harass.* As a result, if any overbreadth exists in the Pennsylvania statute, it is certainly not substantial, and may be cured through case-by-case analysis. *New York v. Ferber,* 458 U.S. 747, 773–74, 102 S.Ct. 3348, 3363–64, 73 L.Ed.2d 1113 (1982), *citing Broadrick, supra* at 615–16, 93 S.Ct. at 2917–18. As the *Ferber* court noted, "Indeed, the Court's practice when confronted with ordinary criminal laws that are sought to be applied against protected conduct is not to invalidate the law in toto, but rather to reverse the particular conviction." *Ferber, supra* at 773, 102 S.Ct. at 3363, *citing Cantwell v. Connecticut,* 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940) and *Edwards v. South Carolina,* 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963).

We find further support for our view that the harassment statute at issue instantly is not overly broad on its face or as applied to appellant in the analysis of the Second Circuit Court of Appeals when confronted with an overbreadth challenge to Connecticut's telephone harassment statute.[5] As the Second Circuit opined:

The asserted overbreadth of the Connecticut statute is circumscribed by the elements of the offense it proscribes. To run afoul of the statute, a telephone call must be made not merely to communicate, but 'with intent to harass,

5. The Connecticut telephone harassment statute, Conn. Gen.Stat. § 53a–183(a)(3) (Rev.1958, Supp.1979), provided in relevant part:

' "A person is guilty of harassment when ... (3) with intent to harass, annoy or alarm another person, he makes a telephone call, whether or not a conversation ensues, in a manner likely to cause annoyance or alarm." '

*Gormley v. Director, Connecticut State Department of Probation,* 632 F.2d 938, 940 n. 1 (2nd Cir.1980), *certiorari denied,* 449 U.S. 1023, 101 S.Ct. 591, 66 L.Ed.2d 485 (1980).

annoy or alarm' and 'in a manner likely to cause annoyance or alarm.' Whether speech actually occurs is irrelevant, since the statute proscribes conduct, whether or not a conversation actually ensues.

*Gormley v. Director, Connecticut State Department of Probation,* 632 F.2d 938, 942 (2nd Cir.1980), *certiorari denied,* 449 U.S. 1023, 101 S.Ct. 591, 66 L.Ed.2d 485 (1980). *See also People v. Hernandez,* 231 Cal.App.3d 1376, 283 Cal.Rptr. 81 (Cal.App. 2 Dist.1991) (applying *Broadrick* "real and substantial" overbreadth test to state's intent to annoy by telephone statute, and finding no overbreadth); *People v. Taravella,* 133 Mich.App. 515, 350 N.W.2d 780 (1984) (following *Broadrick* and finding no overbreadth in state's malicious use of telephone statute based upon specific intent requirement); *State v. Elder,* 382 So.2d 687 (Fla.1980) (applying *Broadrick* "real and substantial" overbreadth test to state's telephone harassment statute and finding no overbreadth); *People v. Parkins,* 77 Ill.2d 253, 32 Ill.Dec. 909, 396 N.E.2d 22 (1979) (finding no overbreadth in statute requiring proof of intent to abuse, threaten or harass), *appeal dismissed,* 446 U.S. 901, 100 S.Ct. 1825, 64 L.Ed.2d 254 (1980). *Cf. Gilbreath v. State,* 650 So.2d 10 (Fla.1995) (excising the words "offend" and "annoy" from statute proscribing telephone calls made with intent to offend, annoy, abuse, threaten or harass), *certiorari denied,* —— U.S. ——, 115 S.Ct. 1966, 131 L.Ed.2d 857 (1995); *People v. Klick,* 66 Ill.2d 269, 5 Ill.Dec. 858, 362 N.E.2d 329 (1977) (declaring overly broad a disorderly conduct statute prohibiting telephone calls made with the intent to annoy another); *Bolles v. Colorado,* 189 Colo. 394, 541 P.2d 80 (1975) (applying *Broadrick* and declaring overly broad a statute proscribing communication by telephone, telegraph or mail with intent to harass, annoy or alarm). *See also State v. Kipf,* 234 Neb. 227, 450 N.W.2d 397 (1990) (collecting cases).

In the instant case, appellant was found guilty of *intending to harass* the recipients of the "hate faxes" when he sent those faxes repeatedly to their places of employment. The trial court determined as a matter of law that appellant had used neither lascivious nor offensively coarse language. (Notes of testimony, 9/12–21/94 at 982.) He therefore charged the jury

that it could only find appellant guilty under § 5504(a)(1) if it determined that he 1) repeatedly and 2) anonymously telephoned another 3) with no intent to communicate and 4) with the intent to harass. (*Id.*) Likewise, the court charged the jury that it could only find appellant guilty under § 5504(a)(2) if it found that he 1) made repeated communications 2) anonymously and 3) with the intent to harass. (*Id.* at 982–83.) The jury found appellant guilty of violating § 5504(a)(2) only. We must agree that the jury could have found the third element, an intent to harass, from the following samples of appellant's faxes: a "Happy James Earl Ray Day" banner faxed to an agency employing only African Americans, to the NAACP headquarters and to Lynn Swann's offices, on or about Martin Luther King Day; (R.R. at 145–46; notes of testimony, 9/12–21/94 at 334, 453–54, 472); an "NAAWP [National Association for the Advancement of White People] FAX" purporting to be a letter from Martin Luther King sent from hell and depicting him as lecherous and lazy, faxed to the same offices (R.R. at 135, notes of testimony, 9/12–21/94 at 335–36, 455, 468); an article suggesting castrating African American males sent to the same offices (R.R. at 104; notes of testimony, 9/12–21/94 at 339, 456–57, 470); and anti-semitic, pro-Aryan supremacy literature sent to the offices of a Jewish attorney (R.R. at 125; 128; 135; notes of testimony, 9/12–21/94 at 425, 428). We find ourselves in complete agreement with the Second Circuit when it stated:

> Harassing telephone calls are an unwarranted invasion of privacy. They appear to be on the increase. They are properly outlawed by federal and state statutes. The possible chilling effect on free speech of the Connecticut statute strikes us as minor compared with the all-too-prevalent and widespread misuse of the telephone to hurt others. The risk that the statute will chill people from, or prosecute them for, the exercise of free speech is remote. The evil against which the statute is directed is both real and ugly.

*Gormley, supra* at 942.

Having found no substantial overbreadth in Pennsylvania's harassment by communication or address statute, we turn next to appellant's claim that the statute is unconstitu-

tionally vague on its face and as applied to him.[6] In order to survive a vagueness challenge, the Supreme Court has held that a penal statute must "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983). As the *Kolender* court continued, "[T]he more important aspect of the vagueness doctrine 'is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement.'" *Id.* at 358, 103 S.Ct. at 1858, *quoting Smith v. Goguen,* 415 U.S. 566, 574, 94 S.Ct. 1242, 1248, 39 L.Ed.2d 605 (1974).

Applying this test to both sections of the statute at issue instantly, we find ourselves in total agreement with the Third

6. Because appellant raises a First Amendment challenge to the vagueness of the statute, and because appellee does not contest appellant's standing to bring the challenge, we address appellant's vagueness claim, even though we are convinced that appellant's own conduct, as noted *supra,* was clearly proscribed by the statute. *See Kolender v. Lawson,* 461 U.S. 352, 358 n. 8, 103 S.Ct. 1855, 1858–59 n. 8, 75 L.Ed.2d 903 (1983) (discussing Justice White's dissent in the same case. Justice White would have refused to address the vagueness claim brought by a party whose own behavior was clearly proscribed by the statute, or who was given sufficient notice that his conduct was proscribed. The majority, in its footnote, distinguished those cases cited by Justice White, and appeared to advocate application of the more expansive *Broadrick* overbreadth standing rule to facial vagueness challenges in the First Amendment arena as well). *Cf. United States v. Brown,* 832 F.2d 128, 131 n. 2 (9th Cir.1987) (declining to address Fifth Amendment challenge to the vagueness of a statute that clearly applied to appellant's conduct in verbally obstructing administration of justice, but noting that the issue of whether First Amendment rights were implicated was not raised by appellant nor addressed by the court). *But see Ferber, supra* at 774, 102 S.Ct. at 3363–64 (finding it unnecessary to consider application of a statute to material that "does not depict sexual conduct of a type that New York may restrict consistent with the First Amendment" where application of the statute to appellant was not violative of appellant's First Amendment rights); *Kipf, supra* at 233–35, 450 N.W.2d at 404 (following *Ferber* and applying the traditional rule of standing to a First Amendment challenge to the vagueness of a telephone harassment statute, observing that this rule "reflects both the personal nature of constitutional rights and the prudential limitations on constitutional adjudication.").

Circuit Court of Appeals in *United States v. Lampley,* 573 F.2d 783 (3d Cir.1978). In *Lampley,* Lampley claimed that the Communications Act of 1934, 47 U.S.C.A. §§ 223(1)(B) and (D), was void for vagueness. Those sections provided, in pertinent part, that a person violates the statute if, in the District of Columbia or in interstate or foreign communication by means of telephone, he "(B) makes a telephone call, whether or not conversation ensues, without disclosing his identity and with intent to annoy, abuse, threaten, or harass any person at the called number;" or "(D) makes repeated telephone calls, during which conversation ensues, solely to harass any person at the called number...." In response, the *Lampley* court stated:

> The section's specific intent requirement renders unconvincing appellant's second claim that §§ 223(1)(B) and (D) are unconstitutionally vague. It has long been true that
>> [t]he Court, indeed, has recognized that the requirement of a specific intent to do a prohibited act may avoid those consequences to the accused which may otherwise render a vague or indefinite statute invalid.... [W]here the punishment imposed is only for an act knowingly done with the purpose of doing that which the statute prohibits, the accused cannot be said to suffer from lack of warning or knowledge that the act which he does is a violation of law.

*Lampley, supra* at 787, *quoting Screws v. United States,* 325 U.S. 91, 101–02, 65 S.Ct. 1031, 1035–36, 89 L.Ed. 1495 (1945). *Accord Thorne, supra* at 243–44.

The same can be said of the statute at issue instantly. Appellant, who was found guilty of possessing the specific intent to harass complainants by repeatedly sending them unsolicited "hate faxes" anonymously, cannot be heard to argue that he did not know that what he was doing was criminal. To "harass" means, *inter alia,* "to trouble by repeated attacks, incursions, etc., as in war or hostilities; harry; raid; to disturb persistently; torment, as with troubles, cares, etc.; to bother continually; pester; persecute." The Random House Dictionary of the English Language 645 (unabridged

ed.1969). The content of the communications, e.g., whether it is coarse, lewd or lascivious, is relevant only insofar as it indicates an intent to harass. *See Lampley, supra* at 787 ("Whether or not the actual conversation contains harassing language may be relevant to the question of intent. However, the nature of the conversation can have no bearing on the constitutionality of the section since its narrow intent requirement precludes the proscription of mere communication."). *See also Commonwealth v. Hart,* 384 Pa.Super. 573, 578, 559 A.2d 584, 587 (1989) ("By the very nature of the language used, [Hart] no doubt knew, or should have known, that his messages would inflict terror on the listener ...").

The trial court, in its charge to the jury, explained the relationship between the content of the speech and the proscribed conduct when he stated:

[T]he law does not permit a Defendant to avoid the consequences of his conduct by disclaimers of an intent to injure or harm or offend or harass. Rather, the law obliges the fact finder—you; you are the fact finders—to rely for the discernment of intent upon demonstrative manifestations of that intent. Every action produces a reaction. Every act has an effect. The nature or essence of an act is most often, and usually convincingly, determined by its effect or result. When an individual knows or should know the consequences of his act, he is presumed to be aware of the nature of his act; and his decision to perform the act is a manifestation of his intent to effect the results of his act. The assigned task of the jury is to determine whether the actor knew or should have known that an effect of his communication would be to harass the recipient.

Now, ladies and gentlemen, the content of the faxes in this case are [sic] protected by the First Amendment to the Constitution of the United States of America. I am sure you are all familiar with the Constitution, Bill of Rights. I am not going to expound a great deal on that.

The mere fact that they may be terribly offensive does not make them criminal. Unless speech presents a clear and present danger of some substantive evil such as imme-

diate violence or is legally obscene, it may neither be forbidden nor penalized.

You may not find the Defendant guilty of any crime simply based upon the content of the messages that were sent or the reaction of the victims to the message, or your displeasure of the messages, or your belief that the Defendant believes in the messages.

Notes of testimony, 9/12–21/94 at 968–69. The first paragraph of this charge was taken almost verbatim from the analysis set forth in *Commonwealth v. Kozinn*, 381 Pa.Super. 64, 68, 552 A.2d 1096, 1098 (1989), *quoted with approval in Hart, supra* at 577–79, 559 A.2d at 587.

It is clear from the foregoing that the statute at issue is not so vague that it could be arbitrarily enforced by police officers, nor so unclear that protected speech could be chilled by its existence. As the *Lampley* court observed, "[Lampley] cannot claim confusion about the conduct proscribed where, as here, the statute precisely specifies that the actor must intend to perform acts of harassment in order to be culpable." *Lampley, supra* at 787.

Finding no constitutional infirmities in Pennsylvania's harassment by communication or address statute, we turn next to appellant's argument that Allegheny County lacked jurisdiction to prosecute him under § 5504(a)(2). As noted *supra*, § 5504(b) provides that an offense under § 5504(a)(1) may be deemed to have been committed either at the place where the calls were made or at the place where the calls were received. According to appellant, if the same were true for violations of § 5504(a)(2), then § 5504(b) would be superfluous.

■ While we appreciate appellant's argument, we agree with the trial court that appellant is reading too much into the presence of § 5504(b). It has long been the law that venue exists in any county in which an overt act, essential to the crime charged, occurs. *Commonwealth v. McPhail*, 429 Pa.Super. 103, 113–15, 631 A.2d 1305, 1311 (1993), *allocatur granted* July 25, 1995; *Commonwealth v. Herriott*, 265 Pa.Su-

per. 143, 151–53, 401 A.2d 841, 846 (1979). Applying that test to the instant case, we note that § 5504(a)(1), by its language, may apply in situations in which no overt act occurs outside the county from which the telephone call is made. For example, a person may "anonymously telephon[e] another person repeatedly" without ever communicating with anyone. A question might arise, therefore, as to whether the county to which the telephone call was made has jurisdiction to prosecute the offense. "The locus of a crime is always at issue, because the court has no jurisdiction over an offense unless it occurred within the county of trial or unless, by some statute, it need not." *McPhail, supra* at 113, 631 A.2d at 1311, *citing Commonwealth ex rel. Chatary v. Nailon,* 416 Pa. 280, 282–85, 206 A.2d 43, 45 (1965). Section 5504(b) was therefore enacted to answer that question.

■ In order to be found guilty under § 5504(a)(2), however, appellant must have been found to have made repeated *communications.* Appellant in the instant case did not communicate until his fax transmissions were received in Allegheny County; therefore, an overt act, essential to the crime charged, occurred in Allegheny County. As a result, the jurisdiction of Allegheny County in the instant case, and the jurisdiction of the county in which any communications are received under § 5504(a)(2), cannot be disputed.

For all of the foregoing reasons, judgment of sentence is affirmed.