## COMMONWEALTH OF PENNSYLVANIA, Appellee,

v.

## Donald JOHN, Appellant.

Superior Court of Pennsylvania.

Submitted April 14, 2004.

Filed July 12, 2004.

**592**

Joseph A. Ratasiewicz, Media, for appellant.

Sheldon Kovach, Asst. Dist. Atty., for Commonwealth, appellee.

Before: DEL SOLE, P.J., ORIE MELVIN and BECK, JJ.

OPINION BY BECK, J.:

¶1 One of the questions raised in this appeal is whether Pennsylvania courts have jurisdiction over a solicitation to engage in criminal conduct made from another state to this state via the internet. We find that jurisdiction here is proper and, further, that the other issues appellant raises have no merit. As a result, we affirm the judgment of sentence.

¶2 Appellant Donald John, while at his place of work in Delaware and Maryland,[1] responded to an internet posting by "Missy," who described herself as a 13 year-old girl in Pennsylvania. In reality, "Missy" was Agent Michele Deery of the Pennsylvania Attorney General's Office acting on assignment to the Delaware County District Attorney's Internet Crimes Against Children Task Force.

¶3 Over a period of about two weeks, appellant communicated with "Missy" via email. His intentions became clear rather quickly as he first explained that he wanted to "hook up" with a young girl and later related that he wished to engage in oral sex and intercourse with the girl. Appellant sent "Missy" explicit pornographic images depicting sexual acts and encouraged her to masturbate in advance of their rendezvous. When he learned that "Missy" had little sexual experience, he reassured her that he would take things slowly. He offered to travel to Media, Pennsylvania to meet "Missy" and suggested that they get a hotel room nearby. Appellant discussed the problems "Missy" might have with her parents in getting out of the house for the night and confirmed that what he planned was illegal. He asked "Missy" to verify that she was not a police officer.

¶4 "Missy" (Agent Deery) agreed to meet appellant on August 14, 2001 at a convenience store in Media, Pennsylvania. Appellant arrived at the designated place and approached an undercover police officer who was posing as the girl and asked her if her name was "Missy." When appellant and the officer began to walk toward appellant's vehicle, police moved in and arrested him.

¶5 At the police department, appellant was advised of his rights, waived them and

---

1. Appellant resides in York, Pennsylvania. Some of his email communications were sent from his home. However, as discussed *infra*, those communications originating in York do not raise a jurisdictional question.

gave a taped statement in which he admitted all of the conduct set out above. He was charged with three counts of Criminal Solicitation[2] to commit Sexual Abuse of a Child, Involuntary Deviate Sexual Intercourse and Statutory Sexual Assault. He was also charged with two counts of Criminal Attempt[3] for Unlawful Contact or Communication with a Minor and Corruption of a Minor. After an unsuccessful attempt to suppress his recorded statement, appellant proceeded to a bench trial before the Honorable Charles C. Keeler. Judge Keeler found appellant guilty of all charges, imposed a prison sentence of three to six years and denied post sentence motions. This timely appeal followed.

¶ 6 Appellant presents three issues on appeal. The first two address only his convictions for solicitation. He claims that the courts of this Commonwealth lack jurisdiction over the solicitation charges and, further, that the trial court erred in denying his motion to quash the solicitation informations based on 18 Pa.C.S.A. § 904(b).[4] Appellant's third claim is that the entire criminal matter should have been dismissed pursuant to 18 Pa.C.S.A. § 905(b).[5] We address the claims in the order they are raised.[6]

 ¶ 7 The basis of appellant's jurisdiction claim is that any solicitations he made were accomplished while he was sitting at his workplace computer in either Maryland or Delaware and, as a result, Pennsylvania's courts do not have jurisdiction over his out-of-state conduct. Jurisdiction is purely a question of law; the appellate standard of review is *de novo* and the scope of review plenary. *Commonwealth v. Bethea*, 574 Pa. 100, 828 A.2d 1066, 1071 n. 5 (2003), *cert. denied*, —— U.S. ——, 124 S.Ct. 1065, 157 L.Ed.2d 911 (2004).

¶ 8 We begin by noting that there are no trial transcripts in the certified record and the origin of appellant's many (over 85) electronic communications with "Missy" cannot be ascertained from the exhibits, which are merely printed versions of the emails he sent. Although many of the exhibits reveal appellant's email address as

**2.** A person is guilty of criminal solicitation to commit a crime if with the intent of promoting or facilitating its commission he commands, encourages or requests another person to engage in specific conduct which would constitute such crime or an attempt to commit such crime or which would establish his complicity in its commission or attempted commission.
18 Pa.C.S.A. 902(a).

**3.** A person commits an attempt when, with *intent to commit a specific crime*, he does any act which constitutes a substantial step toward the commission of that crime.
18 Pa.C.S.A. § 901(a).

**4.** Section 904(b) sets out a defense to solicitation and/or conspiracy; it provides:
It is a defense to a charge of solicitation or conspiracy to commit a crime that if the criminal object were achieved, the actor would not be guilty of a crime under the

law defining the offense or as an accomplice under section 306(e) of this title (relating to status of actor) or section 306(f)(1) or (2) of this title (relating to exceptions).
18 Pa.C.S.A. § 904(b).

**5.** Section 905 addresses the grading of the offenses of attempt, solicitation and conspiracy; it also includes a subsection titled "Mitigation," which provides:

If the particular conduct charged to constitute a criminal attempt, solicitation or conspiracy is so inherently unlikely to result or culminate in the commission of a crime that neither such conduct nor the actor presents a public danger warranting the grading of such offense under this section, the court may dismiss the prosecution.
18 Pa.C.S.A. § 905(b).

**6.** Appellant preserved these claims for review by raising them with the trial court prior to trial.

the one connected to his email account at work, we cannot be certain exactly where appellant was when he sent the email. In addition, appellant specifically told police in his recorded statement that he sent emails to "Missy" from both his home in Pennsylvania and his places of work, out of state.

¶ 9 Certainly, any emails appellant sent from his residence in York, Pennsylvania to Media, Pennsylvania would subject him to the jurisdiction of the Pennsylvania courts. To the extent any of the emails originated from appellant's computer in York, the jurisdiction of the Pennsylvania courts is unquestioned. *See Commonwealth v. Bethea, supra,* at 113, 828 A.2d at 1074 (all courts of common pleas in Pennsylvania have statewide subject matter jurisdiction in cases arising under the Crimes Code).

¶ 10 Still, it is clear that many of the email messages relied on by the Commonwealth to support the solicitation charges were written by appellant while he was at his workplace in Maryland and Delaware. The question then is whether the fact that these communications were sent to "Missy" in Pennsylvania grants the courts of this Commonwealth jurisdiction over the criminal conduct at issue.

¶ 11 Generally, a person may be convicted under the law of this Commonwealth if his "conduct which is an element of the offense or the result which is such an element occurs within this Commonwealth." 18 Pa.C.S.A. § 102(a)(1). Appellant argues that his conduct of soliciting did not occur in Pennsylvania and so he cannot be punished here.

¶ 12 We have reviewed a number of cases discussing the validity of Pennsylvania's jurisdiction when an act or acts connected to a crime within our state originate outside the jurisdiction of the Pennsylvania courts. In *Commonwealth v. Bighum,* 452 Pa. 554, 307 A.2d 255 (1973), the appellant asserted that Pennsylvania had no jurisdiction over a shooting that took place at a post office and in a surrounding area in Philadelphia because the shooting began on federal property that was within the exclusive jurisdiction of the federal courts. The Pennsylvania Supreme Court noted that the death occurred ultimately in Philadelphia and a number of wounds were inflicted within the city limits. Finding that jurisdiction was proper, the court noted that "acts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a state in punishing the cause of the harm." *Id.* at 557–558, 307 A.2d at 258 (quoting *Strassheim v. Daily,* 221 U.S. 280, 31 S.Ct. 558, 55 L.Ed. 735 (1911)).

¶ 13 We recognize that this appeal is unlike *Bighum* in many ways. Rather than involving a series of gunshots that began in one jurisdiction and continued into another, this case involved requests to engage in sexual contact with a 13 year old child. The conduct at issue is electronic communication, sent from one state to another, the substance of which constituted solicitation to commit illegal acts. Despite the difference in the factual scenario, the concern present in *Bighum,* punishing acts that have detrimental effects in this state, surely is present here.

¶ 14 The advent of the internet and its seemingly unlimited ability to connect people near and far have resulted in a tremendous increase in communication. By virtue of this technology, a person sitting in Oregon can chat with someone in Florida, not to mention someone on the other side of the world. When the substance of those electronic communications is punishable by law, as in the written solicitation to engage in criminal conduct, we must ask: where does the conduct at issue, *i.e.,* the solicita-

tion, occur? While we have found no case that precisely controls the facts of this particular case, there are cases in Pennsylvania and beyond its borders that guide our analysis.

¶ 15 In *Commonwealth v. Hendrickson*, 453 Pa.Super. 533, 684 A.2d 171 (1996), *aff'd.*, 555 Pa. 277, 724 A.2d 315 (1999), the appellant was convicted of harassment by communications. The facts revealed that Hendrickson sent over four hundred faxes containing inflammatory racial and ethnic commentary to African American persons and organizations in Pittsburgh. The communications adversely affected the recipients, causing "emotions ranging from consternation to fear." *Id.* at 172. On appeal, Hendrickson claimed that Allegheny County was an improper venue for prosecution because it was the receiving county of the faxes, not the county from which the faxes were sent.

¶ 16 The panel rejected the claim and reasoned that Hendrickson's communications became criminal when his "hate fax" transmissions were *received* in Allegheny County. As a result, prosecution was proper in Allegheny County because an "overt act, essential to the crime, occurred [there]." *Id.* at 179. Although *Hendrickson* involved venue and this case involves jurisdiction, the same logic applies. Appellant sent his criminal solicitations to Pennsylvania, where they were received just as he intended. The harm occurred in Pennsylvania. As a result, the act of solicitation occurred in this Commonwealth.

¶ 17 Other states have addressed similar issues and reached similar results. In *State v. Backlund*, 672 N.W.2d 431 (N.D. 2003), the appellant, from his residence in Minnesota, made contact via the internet with a person he thought to be a 14 year-old girl living in North Dakota. Actually, the person he communicated with was a North Dakota police officer. Backlund so-licited the "girl" to engage in sex and offered to travel to North Dakota to pick her up. Like appellant in this case, Backlund was arrested when he arrived at a designated North Fargo convenience store to meet the "girl."

¶ 18 In addition to challenging the validity of the North Dakota statute he was accused of violating, Luring a Minor by Computer, N.D.C.C. § 12.1–20–05.1, Backlund claimed that his conduct occurred in Minnesota and so he could not be prosecuted in North Dakota. He argued that the crime was committed "at the keyboard" and North Dakota had no jurisdiction over his out-of-state acts. The North Dakota Supreme Court rejected his claim, finding that the *sending* of the solicitation to North Dakota and its *receipt* there, combined with Backlund's travel to the state, made jurisdiction in the state proper.

¶ 19 In reaching its decision, the *Backlund* court adopted the reasoning of a similar case in Illinois. The case of *People v. Ruppenthal*, 331 Ill.App.3d 916, 265 Ill. Dec. 43, 771 N.E.2d 1002 (2002), concerned a California resident who began communicating online with "Stacy," who he thought was a 14 year-old girl in Chicago. In reality, "Stacy" was a Cook County Illinois detective. Ruppenthal arranged to meet "Stacy" at O'Hare International Airport so that the two could "find a private place" and engage in sexual contact. When Ruppenthal arrived at O'Hare and made contact with another detective posing as "Stacy," he was arrested and charged with indecent solicitation of a child.

¶ 20 On appeal, Ruppenthal claimed that Illinois did not have jurisdiction to prosecute him because the "words of solicitation were spoken in California, not Illinois." Id. at 1007. The Court held otherwise:

Although the offense of solicitation is complete upon the utterance of words of

solicitation, no solicitation can occur unless the offending words are heard by another person. Defendant attempted to solicit sexual activity with a girl under the age of 17 living in Illinois, and he traveled to Illinois with the admitted intent of engaging in the sexual acts. The result of defendant's solicitation brought him within Illinois' borders. As with the [out of state] telephone harassment discussed ... [in another Illinois case] Illinois has a valid public interest in protecting minor children in this state from individuals who seek underage sexual partners using the Internet. We find that Illinois has proper jurisdiction over this case.

*Id.* at 1008 (citations omitted).

¶ 21 We agree with the rationale of *Ruppenthal* set out above. Appellant here affirmatively made contact in Pennsylvania. He sent criminal solicitations to this state and those solicitations were received here. Just as the panel in *Hendrickson* concluded that the appellant there was deemed to have communicated in Allegheny County when his fax transmissions were received there, we hold that appellant's solicitations were made in Delaware County when they were *received* there. Certainly, a person who receives a criminal solicitation while sitting at her computer terminal in Pennsylvania is being solicited within this Commonwealth. Jurisdiction of appellant's solicitation crimes properly lies in Pennsylvania because appellant committed those crimes here.

¶ 22 Appellant next claims that there can be no solicitation in this case because "Missy" did not exist. He argues that 18 Pa.C.S.A. § 904(b) sets forth a complete defense that is applicable to these facts. Section 904(b) provides:

Exception.—It is a defense to a charge of solicitation or conspiracy to commit a crime that if the criminal object were achieved, the actor would not be guilty of a crime under the law defining the offense or as an accomplice ....

18 Pa.C.S.A. § 904(b).

¶ 23 Appellant insists that the criminal object could never have been achieved because "Missy" was a fiction. He draws our attention to *Commonwealth v. Fisher*, 426 Pa.Super. 391, 627 A.2d 732 (1993), *appeal denied*, 536 Pa. 639, 639 A.2d 24 (1994), where a panel of this court relied on § 904(b) to overturn a conviction. But appellant has misconstrued § 904(b) and his reliance on *Fisher* is misplaced.

¶ 24 In *Fisher*, police set up a sting operation by using the beeper of a known drug dealer. When police received a call from the dealer's customer, they pretended to arrange a drug sale. Once the customer arrived at a hotel room to make his purchase, police arrested him and charged him with solicitation to deliver a controlled substance. On appeal, a panel of this court held that § 904(b) precluded the conviction because even if things were as the customer believed and the drug deal had proceeded as he had planned, the customer would not have been guilty of drug delivery, but only of possession. *Id.* at 733. The panel vacated the judgment of sentence for solicitation to deliver drugs.

¶ 25 This case presents the opposite scenario. If things were as appellant believed, that is, if a 13 year-old girl had been waiting for him at the convenience store in Delaware County and the two then proceeded, as he had requested, to engage in sex, he indeed would have been guilty of sexual abuse of a child, IDSI and statutory sexual assault.

¶ 26 Neither *Fisher* nor § 904(b) provide appellant relief. Instead, another part of the statute explicitly provides that conduct of the sort engaged in by appel-

lant falls within the scope of the solicitation law. The first part of § 904 states:

[I]t is immaterial to the liability of a person who solicits or conspires with another to commit a crime that:

(1) he or the person whom he solicits ... does not occupy a particular position or have a particular characteristic which is an element of such crime, if he believes that one of them does.

18 Pa.C.S.A. § 904(a)(1).

¶ 27 Clearly, the fact that the person appellant solicited was not a 13 year old girl, as he believed, affords him no defense. The statute is unambiguous and appellant simply is not entitled to relief on his claim.

¶ 28 Appellant's final claim is that the trial court erred in refusing to dismiss all of the charges against him based on 18 Pa.C.S.A. § 905(b). The relevant statute provides:

If the particular conduct charged to constitute a ... solicitation ... is so inherently unlikely to result or culminate in the commission of a crime that neither such conduct nor the actor presents a public danger warranting the grading of such an offense under this section, the court may dismiss the prosecution.

18 Pa.C.S.A. § 905(b).

¶ 29 Appellant insists that because there was no "Missy," his conduct was inherently unlikely to result in the commission of a crime and so dismissal was proper. However, this argument ignores the statutory requirements for dismissal, which explicitly include a finding that the actor does not present a public danger. The danger appellant presents is clear. As the trial court aptly noted, "[t]he fact that a criminal purpose would not have been accomplished because the 'victim' was not, in fact, a child, does not diminish or vitiate [appellant's] capacity to do wrong or his intent to influence someone to engage in a criminal act. Moreover, the record (as evinced by the email trail and the [appellant's] act of coming quite a distance to this Commonwealth to meet his child victim) plainly demonstrates that [appellant] fully intended to accomplish his forbidden motives." Trial Court Opinion, 12/30/03 at 10.

¶ 30 Appellant sought to have sex with a 13 year-old girl, suggested various sexual scenarios the two would explore, sent pornographic materials, supplemented by his own instructions, on how the sexual contact would proceed and made specific arrangements to meet the girl. He then traveled from his place of business in Delaware in the hope that all of this preparation would culminate in the sexual relations he had carefully planned. The conclusion that appellant presents a public danger, and so is not entitled to dismissal pursuant to § 905, is not erroneous.

¶ 31 Judgment of sentence affirmed.