J-S60013-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JIM STIX, | |
| Appellant | No. 1617 EDA 2015 |

Appeal from the Judgment of Sentence May 7, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0002364-2015

BEFORE: SHOGAN, OTT, and STRASSBURGER,[*] JJ.

MEMORANDUM BY SHOGAN, J.: **FILED AUGUST 25, 2016**

Appellant, Jim Stix,[1] appeals from the judgment of sentence entered on May 7, 2015, following his conviction of one count of harassment pursuant to 18 Pa.C.S. § 2709(a)(1). We affirm.

We summarize the facts of the case as follows: Betty Gladney ("the Victim") lives near Appellant on the 1500 Block of North 13th Street in Philadelphia. N.T., 5/7/15, at 9. On October 14, 2014, the Victim observed the monitor of her surveillance system while she was eating dinner with her

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The municipal court and the Commonwealth erroneously identified Appellant as Jim Stixs. Appellant's Brief at 5. The common pleas court corrected the references, but the parties continue to use the incorrect name on appeal. We have corrected the caption and refer to Appellant accordingly.

aunt and uncle in her home at approximately 4:00 p.m., when she noticed Appellant standing in front of her house. *Id*. at 11–13. Appellant held an object resembling a golf club ("club") with a "pointy end," and he poked and kicked at the bricks on the Victim's front walkway. *Id*. at 13–15. The Victim went outside with her aunt and uncle to ask Appellant what he was doing, and Appellant responded by calling them "'B's and 'MF'ers." *Id*. at 16. Appellant also shouted that "nobody is going to tell him where he can walk and what he can do." *Id*. The Victim subsequently called the police, who responded and directed Appellant to stay away from the Victim's property, but they did not arrest Appellant. *Id*. at 16–17.

After the police left that evening, Appellant returned to the street swinging the club and shouting, "[A]nybody want to die tonight[?] You want to die tonight, Bitch[?] You want to die tonight[?]" N.T., 5/7/15, at 17. The Victim called the police, Appellant withdrew to his home, and although police responded, they did not arrest Appellant at that time. *Id.* at 20. The Victim ultimately telephoned the police four times that day, and they responded four times. *Id.* Police told the Victim they had "to catch [Appellant] over there for them to do something about it." *Id.* at 17, 20. The Victim testified that prior to the incidents on October 14, 2014, Appellant would spit at her, swear at her, and photograph her at her home. *Id.* at 17, 22. Appellant admitted to writing and distributing letters to his neighbors that derogatorily referred to the Victim. He wrote in one letter, "[T]he lying bitch will pay."

- 2 -

*Id*. at 67–68.  He also admitted installing a video camera in order to record the Victim's home.  *Id*. at 68–69.

The Victim filed a private criminal complaint on October 15, 2014, charging Appellant with terroristic threats and harassment.  Complaint, 10/15/14.  Appellant and the Victim attended compulsory mediation on multiple dates beginning November 18, 2014, to no avail.  N.T., 5/7/15, at 18.  Appellant was convicted at a bench trial in the Philadelphia Municipal Court on one count of terroristic threats, 18 Pa.C.S. § 2706(a)(1), and one count of harassment, 18 Pa.C.S. § 2709(a)(1), on February 2, 2015.  *Id*. at 87.  On March 4, 2015, the Municipal Court sentenced Appellant to nine months of probation for the terroristic threats conviction; it imposed no further penalty for harassment.  Appellant appealed to the Philadelphia County Court of Common Pleas on March 9, 2015.  When Appellant failed to appear at his trial on April 7, 2015, a bench warrant issued.  Appellant proceeded to trial, where the trial court convicted Appellant of one count of harassment pursuant to 18 Pa.C.S. § 2709(a)(1) and acquitted him of terroristic threats.  On May 7, 2015, the trial court sentenced Appellant to ninety days of probation.  Appellant filed a timely notice of appeal to this Court on May 31, 2015.  Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents the following issue for our review:

> Was the evidence at trial sufficient as a matter of law to support the conviction for harassment, 18 [Pa.C.S.] § 2709(a),

as set forth in the bills of information where the competent evidence of record did not establish beyond a reasonable doubt that [Appellant] communicated to or about a person any lewd, lascivious, threatening or obscene words, language, drawings or caricatures, on October 14, 2014, with the intent to harass, annoy or alarm that person, and where any words uttered by [Appellant] on that date either were not directed to the [Victim] at issue, did not constitute threatening words, or were not uttered with the requisite *mens rea*?

Appellant's Brief at 4.

Our standard of review for a sufficiency-of-the-evidence claim is well settled:

The standard we apply in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict-winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our own judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Colon-Plaza*, 136 A.3d 521, 525–526 (Pa. Super. 2016) (quoting *Commonwealth v. Robertson-Dewar*, 829 A.2d 1207, 1211 (Pa. Super. 2003)).

The crime of harassment is defined, in pertinent part, as follows:

**(a) Offense defined.--**A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person:

> (1) strikes, shoves, kicks, or otherwise subjects the other person to physical contact, or attempts or threatens to do the same;

18 Pa.C.S. § 2709(a)(1).

Appellant argues that the Commonwealth's evidence is insufficient to establish every element of the crime of harassment beyond a reasonable doubt. As noted *supra*, Appellant was convicted of harassment as set forth in 18 Pa.C.S. § 2709(a)(1). Confusingly, Appellant now contends that the communication of his conduct was not through the use of "lewd, lascivious, threatening, or obscene words," referencing section 2709(a)(4). Appellant also suggests that the Commonwealth did not meet its burden of proof in establishing that his actions on October 14, 2014, were threatening. Appellant's Brief at 18. Appellant asserts that although testimony established that he was standing on the street in front of the Victim's home swinging a "thing that looks like a golf club" and shouting, "[A]nybody want to die tonight[?]," there was insufficient evidence to establish that he was threatening the Victim. *Id*. at 19–20. He maintains there was evidence to prove that he was provoked. *Id*. at 18–20. Finally, Appellant contends that even if his words were threatening, the Commonwealth did not establish that he exhibited the necessary *mens rea* because he did not address the Victim directly nor step onto her property. *Id*. at 20.

The Commonwealth maintains that the evidence of record was sufficient. Commonwealth's Brief at 6. The Commonwealth argues that the evidence established that Appellant threatened to harm the Victim when he "swung a club-like object around his body, came within mere feet of his 54-year-old neighbor, and pointedly asked her if she wanted to die that evening." *Id*. at 7. The Commonwealth also observes that the trial court found Appellant's testimony incredible, and that credibility determinations are reserved solely for the fact-finder. *Id*. at 8 (citing ***Commonwealth v. Emler***, 903 A.2d 1273, 1277 (Pa. Super. 2006); ***Commonwealth v. Sanchez***, 848 A.2d 998, 1000 (Pa. Super. 2003)). The Commonwealth notes that Appellant addressed the Victim directly from the front of her home steps, and called her a "bitch," a name he often used to refer to her. *Id*. at 9. The Commonwealth contends that Appellant selectively interprets the evidence and thus, his claim must fail. *Id*. at 9–10.

First, any argument that the evidence was insufficient solely because Appellant did not "intend to invoke sexual desire," Appellant's Brief at 17–18, is inapposite. Appellant was convicted of violating 18 Pa.C.S. § 2709(a)(1), which lacks any reference to the sexual communication of section (a)(4). Thus, we examine solely the evidence relating to 18 Pa.C.S. § 2709(a)(1).

The testimony established that Appellant used the "F word," "MF'ers," and referred to the Victim on many occasions as a "bitch." N.T., 5/7/15, at

16. Testimony also established that Appellant yelled, "[A]nybody want to die tonight[?] You want to die tonight, bitch[?] Anybody want to die tonight[?]" while swinging a club and looking in the direction of the Victim. *Id.* at 17. The prosecutor asked the Victim, "Where were you when [Appellant] said do you want to die tonight?" and the Victim responded, "I was standing at my front porch . . . ." *Id*. at 18. When examining the totality of the circumstances, the fact-finder was able to conclude that Appellant's words and actions toward the Victim were threatening. *Commonwealth v. Hartzell*, 988 A.2d 141, 144 (Pa. Super. 2009); *see also Commonwealth v. Lutes*, 793 A.2d 949, 961 (Pa. Super. 2002) (stating that an intent to harass may be inferred from the totality of the circumstances).

Instantly, Appellant and the Victim had a turbulent history. Prior to this incident, Appellant acknowledged distributing derogatory letters about the Victim to their neighbors and even stating in one, "[T]he lying bitch will pay." N.T., 5/7/15, at 67–68. Given this tempestuous past, it was reasonable for the fact-finder to infer that Appellant intended to harass, annoy, or alarm the Victim. *See Hartzell*, 988 A.2d at 144 (stating that the totality of the circumstances permits the inference that the obscenities were shouted with the intent to harass, annoy, or alarm and this conclusion can be reached by considering the fact that the appellant acted this way

frequently). We thus reject Appellant's claim that his words were not threatening.

We also reject Appellant's claim that he did not possess the required *mens rea* necessary to uphold his conviction. As noted above, it is reasonable to conclude that Appellant intended to harass or annoy the Victim. We agree with the trial court that the conduct Appellant demonstrated was ongoing. Trial Court Opinion, 12/2/15, at 4. The evidence established that Appellant retreated to his home when the police arrived, distributed letters about the Victim to their neighbors, and video-recorded the Victim in her home. N.T., 5/7/15, at 67–69. As the trial court explained, Appellant's retreat into his home each time the police arrived on the scene "demonstrated consciousness of guilt." Trial Court Opinion, 12/2/15, at 4. We have held that "[w]hen an individual *knows* or *should know* the consequences of his act, he is presumed to be aware of the nature of his act, and his decision to perform that act is a manifestation of his intent to [a]ffect the results of his act." *Commonwealth v. Hart*, 559 A.2d 584, 587 (Pa. Super. 1989) (emphasis in original) (quoting *Commonwealth v. Kozinn*, 552 A.2d 1096, 1098 (Pa. Super. 1989)). We do not re-weigh the evidence and substitute our judgment for that of the fact-finder. *Commonwealth v. Mitchell*, 135 A.3d 1097, 1101 (Pa. Super. 2016) (quoting *Commonwealth v. Sanchez*, 36 A.3d 24, 37 (Pa. 2011)). As a

result, we conclude that there was sufficient evidence presented to support Appellant's conviction for harassment.

Judgement of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/25/2016