J-A24033-14

2014 PA Super 254

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| FRANK VERGILIO, | |
| Appellee | No. 2628 EDA 2013 |

Appeal from the Order Entered September 9, 2013
in the Court of Common Pleas of Montgomery County
Criminal Division at No.: CP-46-CR-0001821-2012

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and PLATT, J.[*]

OPINION BY PLATT, J.:                        **FILED NOVEMBER 06, 2014**

The Commonwealth appeals from the trial court's order granting the petition of Appellee, Frank Vergilio, to dismiss for lack of jurisdiction. Specifically, the court dismissed the charges of terroristic threats[1] based on its finding that it lacked jurisdiction because the alleged threats from Appellee originated from a telephone in New Jersey and were directly received by the victim in Pennsylvania.  We reverse.

As observed by the trial court:

> [T]here is no dispute that the telephone calls at issue were made from New Jersey.  [Appellee] and the victim had two

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 18 Pa.C.S.A. § 2706(a)(1).  Appellee's petition did not seek the dismissal of the charge of harassment.  **See** 18 Pa.C.S.A. § 2709(a)(1).

communications between December 3, 2011 and December 4, 2011. On December 3, 2011, the victim called his mother in New Jersey to express his concern over mother's boyfriend, [Appellee]. During the conversation, [Appellee] grabbed the phone from mother and proceeded to engage in a verbal altercation with victim, culminating in the alleged terroristic threats. Hence, the first alleged threat was made by [Appellee] to the victim, while [Appellee] was in New Jersey. Approximately fifteen minutes later, while still in New Jersey, [Appellee] called the victim back and allegedly made additional threats. Again, [Appellee] made this phone call from New Jersey.

(Trial Court Opinion, 1/31/14, at 4 (record citations omitted)).

On April 10, 2012, the Commonwealth charged Appellee with two counts of terroristic threats and one count of harassment. On May 10, 2013, Appellee filed a petition to dismiss the terroristic threats counts for lack of jurisdiction. The court held argument on Appellee's motion on September 4, 2013. On September 9, 2013, the court granted Appellee's petition and dismissed the charges of terroristic threats. The Commonwealth timely appealed.[2]

The Commonwealth raises one question for our review: "Whether the [trial] court erred by concluding that it did not have jurisdiction over terroristic threats charges, where [Appellee] in New Jersey communicated

---

[2] Pursuant to the trial court's order, the Commonwealth filed a Rule 1925(b) statement on October 15, 2013. The court filed a Rule 1925(a) opinion on January 31, 2014. *See* Pa.R.A.P. 1925.

- 2 -

the threats over the phone to the victim in Pennsylvania?" (Commonwealth's Brief, at 4).[3]

The Commonwealth argues that the trial court improperly found that it did not have jurisdiction[4] where "[Appellee] communicated the threats to the victim [who was in] Pennsylvania[, and thus] the communication . . . occurred within the Commonwealth." (Commonwealth's Brief, at 13). After a thorough review of the law on this issue, we agree.

We begin by noting that, while we agree with Appellee that "[t]he object of all interpretation and construction of a statute is to ascertain and effectuate the intent of the General Assembly[,]" (Appellee's Brief, at 14 (citations omitted)), we are not legally persuaded by his argument that the General Assembly intended, by not specifically identifying where a communication occurs for the purpose of the terroristic threats statute, that

---

[3] Because the Commonwealth's issue challenges the court's finding that it lacked jurisdiction, our standard of review is *de novo* and our scope of review is plenary. **See Commonwealth v. John**, 854 A.2d 591, 593 (Pa. Super. 2004), *appeal denied*, 870 A.2d 320 (Pa. 2005).

[4] Specifically, the trial court observed that, while the terroristic threats statute does not address whether the threat is communicated when spoken or when heard, the harassment statute expressly provides that "[h]arassment may be deemed to have been committed at either the place at which the communication or communications were made or at the place where the communication or communications were received." (Trial Ct. Op., at 4 (citing 18 Pa.C.S.A. § 2709(b.1)). The court reasoned, therefore, that, because the terroristic threats statute did not contain language similar to that of the harassment statute, it "lacked jurisdiction to address the [t]erroristic [t]hreats counts against [Appellee]." (**Id.**).

the communication must be considered made only in the place in which it is uttered. (*See id.* at 14-15).[5]

To establish the crime of terroristic threats pursuant to section 2706(a)(1) of the Crimes Code, the Commonwealth must prove that the defendant "communicate[d], either directly or indirectly, a threat to . . . commit any crime of violence with intent to terrorize another[.]" 18 Pa.C.S.A. § 2706(a)(1); *see also Commonwealth v. Tizer*, 684 A.2d 597, 600 (Pa. Super. 1996) (same). "[T]he elements [necessary to establish a violation of the terroristic threats statute] are: (1) a threat to commit a crime of violence; and (2) that the threat was communicated with the intent to terrorize or with reckless disregard of the risk of causing such terror." *Commonwealth v. Ferrer*, 423 A.2d 423, 424 (Pa. Super. 1980) (footnote omitted). Section 2706 defines the word, "communicates," to mean "conveys in person or by written or electronic means, including telephone . . . ." 18 Pa.C.S.A. § 2706(e).

---

[5] We are cognizant of the principle espoused by Appellee, "that where certain things are included in a statute, all omissions are to be understood as exclusions." (Appellee's Brief, at 21-22 (citations omitted)). However, merely because the terroristic threats statute does not include a **venue** provision like the harassment statute about where a communication is deemed to occur, this does not lead to the necessary conclusion that **jurisdiction** lies **only** at the place where it was uttered. As discussed more fully, *infra*, an equally and indeed more compelling argument can be made that, by omitting the language, the legislature intended the usual use of the term, "communicate," and therefore jurisdiction lies **also** in the place where received.

Our courts have not specifically addressed the definition of this word, "communicates," in section 2706. *See* 18 Pa.C.S.A. § 2706. Pursuant to Rule of Statutory Construction 1928, penal statutes are to be strictly construed. *See* 1 Pa.C.S.A. § 1928(b)(1); *see also id.* at § 1921(a) (providing, in part, that "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly."). Section 105 of the Crimes Code provides, in pertinent part: "The provisions of this title shall be construed according to the fair import of their terms but when the language is susceptible of differing constructions it shall be interpreted to further the general purposes stated in this title and the special purposes of the particular provision involved." 18 Pa.C.S.A. § 105. Section 102 states, in relevant part: "Except as otherwise provided in this section, a person may be convicted under the law of this Commonwealth of an offense committed by his own conduct . . . if . . . the conduct which is an element of the offense or the result which is such an element occurs within this Commonwealth[.]" 18 Pa.C.S.A. § 102(a).

Here, the terroristic threats statute is clear and unambiguous that a communication must be conveyed. *See* 18 Pa.C.S.A. § 2706(a)(1); *see also* 1 Pa.C.S.A. §§ 1928(b)(1). The official comment to Section 2706 states, "[t]he purpose of the section is to impose criminal liability on persons who make threats which seriously impair personal security or public convenience." 18 Pa.C.S.A. § 2706, official comment—1972; *see also* 1

Pa.C.S.A. § 1921(a); **Commonwealth v. Hardwick**, 445 A.2d 796, 797 (Pa. Super. 1982) (same).

Therefore, while the statute does not expressly address whether to construe a threat as being made at the time it is uttered or at the time it is received, we observe that a person's "personal security" cannot be "seriously impair[ed]" by a threat unless he hears it. **Id.** Accordingly, based on the statute's plain meaning, our strict construction of it, and the legislature's stated purpose in enacting it, we conclude that the term, "communicates," as used in the terroristic threats statute, contemplates that the threat be received. Hence, jurisdiction in this case properly lies in the Pennsylvania trial court because an element of the statute occurred here, *i.e.*, the victim received the threat, a necessary element of a communication.

Moreover, we agree with the Commonwealth that interpreting the terroristic threats statute in the manner proposed by Appellee and the trial court leads to an untenable result in the face of current technology that creates a "seemingly unlimited ability to connect people near and far." (Commonwealth's Brief, at 13 (citing **John**, **supra** at 594-95)). It would render an offender who utters a threatening message in one state immune from suit in any and all other states to which he intentionally sends his illegal communication.

While not precisely on point, we find **John** instructive. In **John**, the defendant used computers in Delaware and Maryland to send emails to

someone who he believed to be a thirteen year old girl in Pennsylvania. **See John**, **supra** at 592. The supposed underage girl, in actuality, was an agent from the Pennsylvania Attorney General's office. **See id.** The defendant argued that the courts in Pennsylvania lacked jurisdiction because the emails were sent from outside the Commonwealth. **See id.** at 593. In rejecting this argument, this Court stated:

> The advent of the internet and its seemingly unlimited ability to connect people near and far have resulted in a tremendous increase in communication. By virtue of this technology, a person sitting in Oregon can chat with someone in Florida, not to mention someone on the other side of the world. When the substance of those electronic communications is punishable by law, as in the written solicitation to engage in criminal conduct, we must ask: where does the conduct at issue, *i.e.,* the solicitation, occur? . . .

**Id.** at 594-95.

After reviewing a similar Pennsylvania case, and caselaw from other jurisdictions, this Court concluded:

> Appellant here affirmatively made contact in Pennsylvania. He sent criminal solicitations to this state and those solicitations were received here. . . . [W]e hold that appellant's solicitations were made in Delaware County when they were **received** there. Certainly, a person who receives a criminal solicitation while sitting at her computer terminal in Pennsylvania is being solicited within this Commonwealth. Jurisdiction of appellant's solicitation crimes properly lies in Pennsylvania because appellant committed those crimes here.

*Id.* at 596 (emphasis in original).[6]

*John*'s interpretation of where a "solicitation" is made, as well as our reading of the terroristic threats statute, comport with long-standing principles in this Commonwealth. For example, it has long been held that "[a]cts done outside a jurisdiction, but intended to produce and producing detrimental effects[7] within it, justify a state in punishing the cause of the harm. . . ." *Commonwealth v. Bighum*, 307 A.2d 255, 258 (Pa. 1973), *abrogated on other grounds*, *Commonwealth v. Randall*, 528 A.2d 1326

_____

[6] Appellee attempts to distinguish *John* on the basis that, there, a panel of this Court found that, because some of the subject emails were sent from his home in Pennsylvania, "that fact alone vested Pennsylvania courts with jurisdiction to prosecute the offences." (Appellee's Brief, at 23 (citing *John*, *supra* at 593-94)). However, Appellee misrepresents the case's holding. While it is true that we observed, "[c]ertainly, any emails appellant sent from his residence in York, Pennsylvania to Media, Pennsylvania would subject him to the jurisdiction of the Pennsylvania courts[,]" the emails sent from Pennsylvania were not the subject of the issue under review, and did not form the basis for our holding. *John*, *supra* at 594 (citation omitted); *see also id.* at 596 (concluding that solicitations sent from out-of-state and received in Pennsylvania vested the Pennsylvania court with jurisdiction).

Appellee also points out that the defendant in *John* travelled from his place of work in Delaware to meet "Missy" in Pennsylvania, a fact that is not present here. (*See* Appellee's Brief, at 23-24). However, Appellee provides no citation to *John* that this Court considered this factor in reaching its holding, (*see id.*), and our review reveals that we did not do so.

[7] The trial court found that "detrimental effects or harm is not an element of [t]erroristic [t]hreats." (Trial Ct. Op., at 5 (internal quotation marks omitted)). We disagree. It is undisputed that a communication is an element of the terroristic threats statute. *See* 18 Pa.C.S.A. § 2607(a)(1). Communication requires, not merely the utterance of the threat, but the victim's receipt of it, which is the intended, detrimental effect or harm that, in this case, occurred in Pennsylvania.

- 8 -

(Pa. 1987) (citations and internal quotation marks omitted).  This "[justifies] a state in punishing the cause of the harm as if [the defendant] had been present at the effect."  ***Commonwealth v. Thomas***, 189 A.2d 255, 259 (Pa. 1963), *cert. denied*, 375 U.S. 856 (1963) (citations omitted).  These general principles provide further support for our conclusion that the legislature intended that a communication under the terroristic threats statute necessarily involves a person speaking the threat, and an individual receiving it.

Additionally, although our extensive research of this issue did not reveal any Pennsylvania caselaw that has addressed the specific issue presented here,[8] we find the pertinent caselaw of other jurisdictions to be

---

[8] The trial court and Appellee rely on ***Commonwealth v. Kelley***, 664 A.2d 123 (Pa. Super. 1995), *appeal denied*, 674 A.2d 1068 (Pa. 1996), for the proposition that, because "there does not need to be any direct contact between the perpetrator and the victim[,]" the victim's receipt of the communication is not required.  (Trial Ct. Op., at 3; ***see also*** Appellee's Brief, at 11).  We disagree with this interpretation of the case.

In ***Kelley***, the defendant argued that the Commonwealth failed to present a *prima facie* case at the preliminary hearing where "the communicator of the threat . . . was not terrorized herself, nor was she instructed by [a]ppellant to communicate the threat to the victims."  ***Kelley***, ***supra*** at 126.  This Court concluded that the Commonwealth was not required to prove "that the person to whom [a]ppellant communicated the threat was actually frightened."  ***Id.*** at 127.  In reaching this conclusion, we observed that:

> . . . the evidence on the record established that [a]ppellant made a threat to commit a crime of violence and that he communicated such threat to [the intended recipient's]

*(Footnote Continued Next Page)*

persuasive.[9]   For example, in **Kansas v. Woolverton**, 159 P.3d 985 (Kan. 2007), the defendant was convicted of criminal threats[10] for phone calls he made from Missouri to the victim in Kansas.  **See Woolverton**, **supra** at 988.   On direct appeal, Woolverton argued, in pertinent part, that the evidence was insufficient to support his conviction where the state failed to prove that the crime occurred in Kansas because "the act of criminal threat is complete when the threat is uttered."  **Id.** at 992.

In dismissing this argument, the court found:

> Criminal threat, as it applies in this case, is defined as "any threat to: (1) Commit violence communicated with intent to terrorize another . . . or in reckless disregard of the risk of causing such terror." K.S.A. 2006 Supp. 21-3419(a)(1).   The plain language of the statute proscribes the act of communicating a threat to commit violence.   The verb communicate is defined as "[t]o express oneself in such a way that one is readily and clearly understood." The American Heritage Dictionary 299 (2d ed. 1985).  The word "understood"

*(Footnote Continued)* ————————————

> secretary, when she asked if she could give [the intended recipient] a message.  This threat was in turn communicated to the intended recipient[].   Accordingly, [a]ppellant's conduct met the requirement that the threat be communicated to the victims.

**Id.** at 127.  Contrary to the assertions of Appellee and the trial court, the holding of **Kelley** actually supports our conclusion that, for a threat to be "communicated," it must be received.

[9] "While a decision from another jurisdiction is certainly not binding, it may be persuasive."  **Tagouma v. Investigative Consultant Serv., Inc.**, 4 A.3d 170, 175 n.3 (Pa. Super. 2010) (citation omitted).

[10] Woolverton also was convicted of telephone harassment, but this fact is not relevant to our review.

means "perceived and comprehended." The American Heritage Dictionary, 1318 (2d ed. 1985). Thus, the term "communicate" as used in K.S.A. 2006 Supp. 21-3419(a) requires a declarant and a receiver for the threat because the threat must be perceived and comprehended.

\* \* \*

Pursuant to K.S.A. 21-3104(1)(a), the State has jurisdiction over any crime that is committed wholly or partly within Kansas. An offense is committed partly within this state if an act comprising a constituent and material element of the offense is committed within the state. K.S.A. 21-3104(2). Because the offense of criminal threat requires a communication, which involves both the declaration of a threat and the perception and comprehension of the threat, there are two acts comprising the constituent and material elements of the offense—speaking and perceiving. **Although Woolverton spoke the threat in Missouri, [the victim] perceived the threat at her home in Johnson County, Kansas. Thus, an act comprising a constituent and material element of criminal threat was committed in Kansas.**

*Id.* at 993.

In **Sykes v. Minnesota**, 578 N.W.2d 807 (C.A. Minn. 1998), *cert. denied*, 525 U.S. 1055 (1998), the defendant was charged with six counts of terroristic threats[11] following phone calls he made and letters he sent from England to individuals in Minnesota. **See Sykes**, **supra** at 809. Sykes argued that Minnesota lacked jurisdiction where "there was no operative

---

[11] Minnesota's Criminal Code provides, in pertinent part, that a person is guilty of terroristic threats if he "threatens, directly or indirectly, to commit any crime of violence with purpose to terrorize another." M.S.A. § 609.713.

The Code further provides that a person can be convicted in Minnesota if he, "being without the state, intentionally causes a result within the state prohibited by the criminal laws of this state." *Id.* at § 609.025.

event that took place within Minnesota that could constitute the essential elements of the crime of making terroristic threats." **Sykes**, **supra** at 810 (internal quotation marks omitted). In analyzing Sykes' claim, the court noted that "[f]or a district court in Minnesota to have jurisdiction in this case, some part of the offense of terroristic threats had to be committed within the territorial boundaries of Minnesota." **Id.** at 811.

The court observed that the pertinent section of the terroristic threats statute required that the "defendant utter the threat with the purpose of terrorizing another." **Id.** While the court acknowledged that the effect of a terroristic threat is not an element of the offense, it is circumstantial evidence relevant to the evidence of intent. **See id.**

The court concluded:

> When Sykes composed the threatening letter and made the telephone call from England, he intended those threats to reach victims within the territorial boundaries of Minnesota. Sykes accomplished that. Had Sykes not communicated his threats to his intended victims, he could not have been charged with making terroristic threats in Minnesota. For instance, assume that he drafted a letter, but then never sent it. Or assume that he wrote a threatening letter, but it got lost in the mail in England and was never received. In those hypothetical situations, Sykes would have an arguable defense, both on the merits and on the issue of whether Minnesota had jurisdiction. An individual cannot be guilty of making terroristic threats if the threat of violence is not communicated to the intended victim.
>
> *    *    *
>
> . . . [T]he crime of making terroristic threats was complete when Sykes's threats were received by the victims in Minnesota. At that point, a significant part of the situs of the crime was within Minnesota's territorial boundaries. We conclude that **because**

- 12 -

> **Sykes's threats were received within the territorial boundaries of Minnesota, "some part of the charged offense" was committed within Minnesota.**

*Id.* at 811-12 (emphasis added).

Similarly, in **Hawaii v. Meyers**, 825 P.2d 1062 (Haw. 1992), Meyers was charged with terroristic threats[12] after she made a threatening phone call from California to her probation officer in Hawaii. **See Meyers**, **supra** at 1063. In analyzing Meyers' argument that Hawaii lacked jurisdiction, the court observed the long standing United States Supreme Court precedent that "[a]cts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a state in punishing the cause of the harm as if he had been present at the effect[.]" **Id.** at 1064 (citing **Strassheim v. Daily**, 221 U.S. 280, 285 (1911)).

In finding that the court in Hawaii had jurisdiction, the **Meyers** court observed:

> To "threaten" is to "utter a threat against." *Random House Dictionary of the English Language* 1975 (1987). A "threat," in turn, is defined as "[a] communicated intent to inflict physical or other harm on any person or property." *Black's Law Dictionary* 1480 (6th ed. 1990). To be subject to criminal prosecution for terroristic threatening, therefore, the threat must be conveyed to either the person who is the object of the threat or to a third party. An uncommunicated threat, by definition, cannot

---

[12] Hawaii Revised Statute 707-715 provides, in pertinent part: "A person commits the offense of terroristic threatening if the person threatens, by word or conduct, to cause bodily injury to another person . . . [w]ith the intent to terrorize, or in reckless disregard of the risk of terrorizing, another person[.]" Haw.Rev.Stat. § 707-715(1).

threaten. . . . [A] person making threats does not commit a crime until the threat is heard by one other than the speaker. When the telephone is employed as an instrument to transmit threats, it is clear that the caller must communicate the threats to someone on the receiving end of the telephone line. Threats uttered to a busy signal, a dial tone, or to a series of unanswered rings threaten no one.

*Id.* (case citation and some quotation marks omitted). Based on the foregoing analysis, the court concluded:

We hold that for purposes of establishing criminal jurisdiction, a telephone call constitutes conduct in the jurisdiction in which the call is received. Although Meyers's threats were uttered from California, the threats were communicated to [the victim] in Hawaii. Thus, **because [the victim] heard the threats in Hawaii, jurisdiction over the offense properly lies in the State of Hawaii**.

*Id.* at 1064-65 (emphasis added); *see also State v. J.M.*, 28 P.3d 720, 725 (Wash. 2001) (observing terroristic threats statute requires that person threatened must receive the threat).

The above analyses and resulting conclusions realized in *Sykes*, *Woolverton*, and *Myers* comport with the long-standing legal principles in our Commonwealth and the legislature's stated purpose in enacting the terroristic threats statute. *See* 18 Pa.C.S.A. § 2706, official comment—1972; *Bighum*, *supra* at 258; *Thomas*, *supra* at 259; *John*, *supra* at 596. Therefore, their holdings, that a terroristic threat is committed, at least in part, in the state in which the victim receives it, are persuasive and are compatible with our conclusion that, in order for a

- 14 -

communication to be conveyed in satisfaction of the terroristic threats statute, it must be received by another person.

Accordingly, based on the legislative intent of the terroristic threats statute, our review of caselaw within and outside this Commonwealth, and because the victim received Appellee's alleged threat in Montgomery County, Pennsylvania,[13] the trial court has jurisdiction to "punish[] the cause of the harm." **Bighum**, **supra** at 258; **see also** 18 Pa.C.S.A. § 2706, official comment—1972; **John**, **supra** at 596; **Thomas**, **supra** at 259; **Sykes**, **supra** at 811-12; **Woolverton**, **supra** at 993; **Myers**, 1064-65. Hence, the law requires we conclude that the trial court committed an error of law when it found that it lacked jurisdiction, and dismissed the Commonwealth's claims for terroristic threats. **See John**, **supra** at 523. We reverse the court's order granting Appellee's motion to dismiss, and remand for disposition.

Reversed and remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/6/2014

---

[13] It is undisputed that the telephone calls were between Appellee in New Jersey and the victim in Pennsylvania. (**See** Commonwealth's Brief, at 5-6; Trial Ct. Op., at 4; Appellee's Brief, at 2).