J-S31025-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SCOTT D. GRANT, | |
| Appellant | No. 1000 MDA 2014 |

Appeal from the Judgment of Sentence entered February 26, 2014,
in the Court of Common Pleas of Lancaster County,
Criminal Division, at No(s): CP-36-CR-0004215-2013

BEFORE:  BENDER, P.J.E., ALLEN, and WECHT, JJ.

MEMORANDUM BY ALLEN, J.:                    **FILED JUNE 05, 2015**

Scott D. Grant ("Appellant") appeals from the judgment of sentence imposed after the trial court convicted him of terroristic threats and retaliation against a victim, witness or party.[1]  We affirm.

The notes of testimony reveal the following:  Ephrata Police Officer Kenneth E. Lockhart, Jr. testified that in April of 2012, he was the lead investigator in a criminal case involving Appellant.  N.T., 2/6/14, at 9-10, 14.  Based on his investigation of Appellant in 2012, Officer Lockhart became a Commonwealth witness.  *Id*. at 10.

In February of 2013, Detective Joseph Hockley from the Lancaster County District Attorney's office contacted Officer Lockhart and advised him

---

[1] 18 Pa.C.S.A. §§ 2706(a)(1) and 4953.

that Appellant had made verbal and written statements which caused Officer Lockhart to be "concerned that someone out there within the community [was] going to attempt to harm me or members of my family."  *Id*. at 10-11, 20, 26.

Hank Faleski testified to being cellmates with Appellant in the Lancaster County Prison in December of 2012.  *Id*. at 30.  Mr. Faleski said:

> [Appellant] made me aware that Detective Lockhart had previously arrested him and that this was the second time he had been arrested by Detective Lockhart, and he expressed what I would consider a tremendous amount of animosity towards Detective Lockhart.

*Id*. at 31.

Specifically, Mr. Faleski related that Appellant, "on multiple occasions" … "said he wanted to kill [Detective Lockhart]."  *Id*. at 32.  Mr. Faleski testified:

> [Appellant] told me he had a 12-gauge shotgun and 9-millimeter pistol, Smith & Wesson.  He would be waiting for [Detective Lockhart] when he came to the door.  He would be sitting in a chair, recliner-type chair, and that his first line of defense would be the 12-gauge shotgun and pistol when he opened the door and came in, he was going to let him have it.
>
> ***
>
> Again, [Appellant] expressed on a daily basis a lot of animosity and anger and hatred towards Detective Lockhart.  On occasion, you know, he would talk about his demise.
>
> ***
>
> He expressed he wanted to kill him a number of times.  I would say at least six, maybe twelve.
>
> ***

> He told me he owned guns. … He told me he had a storage unit and it was 20 by 60 and it was in Ephrata.

*Id*. at 32-33.

When he was released from prison, Mr. Faleski relayed Appellant's comments to his probation officer. *Id*. at 34. Mr. Faleski explained that he told his probation officer about the statements because Appellant discussed "collateral damage of other victims," and Appellant "didn't care if innocent people died in a shoot-out that was eventually going to follow." *Id*. at 35. Mr. Faleski stated that he "absolutely" was concerned about the safety of the community. *Id*. Mr. Faleski additionally conceded that it was "probably accurate or at least a factor to some extent" that he wanted to advantage himself in his upcoming probation violation hearing. *Id*. at 36-37, 54. He testified:

> … I wasn't going to let a deal benefitting me jeopardize the lives of a detective or victim or innocent people on the street. I'm not going to hold up knowledge that I have of an offense about to be committed because I want a deal. A life was involved here.

*Id*. at 50. Mr. Faleski added that he "wanted to be on good terms" with his probation officer. *Id*. at 56.

After Mr. Faleski relayed the information to his probation officer, the probation officer directed him to the District Attorney's Office, where Mr. Faleski spoke with Detective Hockley. *Id*. at 34.

Arnold Sensenig testified to being "friendly" with Appellant. *Id*. at 59. When Appellant was in prison, Mr. Sensenig communicated with him by

telephone, in written letters, and in "face-to-face" visits. *Id*. at 64-65. On or about January 31, 2013, while in prison, Appellant sent Mr. Sensenig a letter. *Id*. at 63; Commonwealth Exhibit 1. Mr. Sensenig read the letter:

> Hi, Arnold, this is [Appellant]. It's time to end this cop's career. He screwed up enough of people's lives in Ephrata by his lies and deception. There will be an unknown person coming to visit to pick up two of the items I told you we won't talk about on the phone. Don't ask any names or where they live. Everything would be good and safe. If I am losing 200,000 because of him, he is going to lose something he thinks very much of and means very much to him. Also, like the Good Book says, an eye for an eye, tooth for a tooth.

*Id*. at 63.

Mr. Sensenig testified that he "assumed" that the "items that you won't talk about on the phone" were guns. *Id*. Mr. Sensenig testified that he gave the letter to Detective Hockley. *Id*. With regard to Appellant's reference to "this cop," Mr. Sensenig testified, "I think I heard a name." *Id*. at 70. He identified the name as "Detective Lockhart." *Id*. With regard to a verbal statement by Appellant, Mr. Sensenig testified: "If I recall right, he just said he is going to get him, even if he is six feet under." *Id*. at 80.

Lancaster County Detective Joseph Hockley testified that on February 11, 2013, he spoke with Mr. Faleski, who provided details regarding statements made by Appellant. *Id*. at 89. Detective Hockey further testified that Mr. Sensenig contacted him on March 11, 2013, and "[Mr. Sensenig] also made the statement that – he said he remembers in one of the letters, talking about his letters he had been receiving from [Appellant],

and one stating that the officer in this case had to be dealt with, even if it meant six feet under." *Id*. at 106. Mr. Sensenig voluntarily gave the letter to Detective Hockley. *Id*. at 107; Commonwealth Exhibit 1.

Thereafter, Detective Hockley filed terroristic threats and retaliation charges against Appellant. A bench trial convened on February 6, 2014, and the trial court rendered its guilty verdicts on February 7, 2014. On February 26, 2014, the trial court sentenced Appellant to two (2) to seven (7) years of incarceration. On or about April 9, 2014, Appellant filed a motion for post-conviction collateral relief, seeking *nunc pro tunc* reinstatement of his direct appeal rights. By order dated May 15, 2014, the trial court reinstated Appellant's direct appeal rights *nunc pro tunc*. Appellant filed his notice of appeal on June 11, 2014. The trial court and Appellant have complied with Pa.R.A.P. 1925.

Appellant raises a single issue for our review:

> CAN AN ACTOR BE CULPABLE OF CRIMINAL OFFENSES BASED UPON THREATENING A POLICE OFFICER WHO INITIATED A CRIMINAL PROSECUTION AGAINST HIM, WHEN THE ACTOR COMMUNICATED SUCH THREATS TO THIRD PARTIES UNKNOWN TO THE POLICE OFFICER WITH NO INTENT THAT SUCH PERSONS EVER RELAY THE THREATS TO THE POLICE OFFICER?

Appellant's Brief at 4.

Appellant claims that there was insufficient evidence to support his convictions because "[Appellant] did not communicate the threats to the police detective. Instead, he communicated the threats to persons who did not know the police detective. The evidence did not establish that

- 5 -

[Appellant] intended for those third parties to communicate the threats to the police detective." Appellant's Brief at 8.

> Our standard when reviewing the sufficiency of the evidence is whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict-winner, are sufficient to establish all elements of the offense beyond a reasonable doubt. We may not weigh the evidence or substitute our judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part or none of the evidence.

***Commonwealth v. Emler***, 903 A.2d 1273, 1276–77 (Pa. Super. 2006).

With regard to terroristic threats, we recently explained:

> To establish the crime of terroristic threats pursuant to section 2706(a)(1) of the Crimes Code, the Commonwealth must prove that the defendant "communicate[d], either directly or indirectly, a threat to ... commit any crime of violence with intent to terrorize another[.]" 18 Pa.C.S.A. § 2706(a)(1); s*ee also Commonwealth v. Tizer,* 454 Pa.Super. 1, 684 A.2d 597, 600 (1996) (same). "[T]he elements [necessary to establish a violation of the terroristic threats statute] are: (1) a threat to commit a crime of violence; and (2) that the threat was communicated with the intent to terrorize or with reckless disregard of the risk of causing such terror." *Commonwealth v. Ferrer,* 283 Pa.Super. 21, 423 A.2d 423, 424 (1980) (footnote omitted). Section 2706 defines the word, "communicates," to mean "conveys in person or by written or electronic means, including telephone ...." 18 Pa.C.S.A. § 2706(e).
>
> Our courts have not specifically addressed the definition of this word, "communicates," in section 2706. *See* 18 Pa.C.S.A. § 2706. Pursuant to Rule of Statutory Construction 1928, penal statutes are to be strictly construed. *See* 1 Pa.C.S.A. § 1928(b)(1); *see also id.* at § 1921(a) (providing, in part, that

"[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly."). Section 105 of the Crimes Code provides, in pertinent part: "The provisions of this title shall be construed according to the fair import of their terms but when the language is susceptible of differing constructions it shall be interpreted to further the general purposes stated in this title and the special purposes of the particular provision involved." 18 Pa.C.S.A. § 105. Section 102 states, in relevant part: "Except as otherwise provided in this section, a person may be convicted under the law of this Commonwealth of an offense committed by his own conduct ... if ... the conduct which is an element of the offense or the result which is such an element occurs within this Commonwealth[.]" 18 Pa.C.S.A. § 102(a).

Here, the terroristic threats statute is clear and unambiguous that a communication must be conveyed. *See* 18 Pa.C.S.A. § 2706(a)(1); *see also* 1 Pa.C.S.A. § 1928(b)(1). The official comment to Section 2706 states, "[t]he purpose of the section is to impose criminal liability on persons who make threats which seriously impair personal security or public convenience." 18 Pa.C.S.A. § 2706, official comment–1972; *see also* 1 Pa.C.S.A. § 1921(a); *Commonwealth v. Hardwick,* 299 Pa.Super. 362, 445 A.2d 796, 797 (1982) (same).

Therefore, while the statute does not expressly address whether to construe a threat as being made at the time it is uttered or at the time it is received, we observe that a person's "personal security" cannot be "seriously impair[ed]" by a threat unless he hears it. *Id.* Accordingly, based on the statute's plain meaning, our strict construction of it, and the legislature's stated purpose in enacting it, we conclude that the term, "communicates," as used in the terroristic threats statute, contemplates that the threat be received.

*Commonwealth v. Vergilio*, 103 A.3d 831, 833-834 (Pa. Super. 2014).

Appellant argues that he did not possess the intent or recklessness necessary to support his terroristic threats conviction. **See** Appellant's Brief at 25-26. The trial court, sitting as the fact finder, disagreed. The trial court credited all four of the Commonwealth's witnesses and explained:

In addition to the testimony of Mr. Faleski, Mr. Sensenig, and Detective Hockley, the Commonwealth offered the testimony of Detective Lockhart, who detailed his experiences with [Appellant] and knowledge of [Appellant's] threatening statements. …. As discussed above, to prove that [Appellant] committed the crime of terroristic threats, the Commonwealth had to prove beyond a reasonable doubt that he communicated a threat with the intent to terrorize another. Based on the evidence and testimony discussed above, which the court carefully considered and assigned weight based on credibility and substance, the undersigned was satisfied that the Commonwealth had met its burden in proving that [Appellant] had communicated a threat with the intent to terrorize another. Because the Commonwealth met its burden of proof as to each material element of the crime, the undersigned found [Appellant] guilty of terroristic threats.

Trial Court Opinion, 12/16/14, at 6-7. Because the trial court's reasoning is supported by both the record and law, Appellant's sufficiency argument relative to terroristic threats lacks merit.

With regard to the sufficiency of the evidence supporting his conviction for retaliation, Appellant offers a scant one paragraph argument, in which he "submits that the same analysis applies to the offense of retaliation … [Appellant] cannot be guilty of the offense without being responsible for the conveyance of the statements to the object under either a 'knowing' or 'reckless' culpability standard." Appellant's Brief at 26. Appellant's argument is undeveloped and therefore waived. *See, e.g., Commonwealth v. Love*, 896 A.2d 1276, 1287 (Pa. Super. 2006) ("Arguments not appropriately developed are waived."); *Commonwealth v. Brewer*, 876 A.2d 1029, 1035 (Pa. Super. 2005) (argument deficient where it was not appropriately developed by citation to authority).

We nonetheless note the applicable statute:

**Retaliation against witness, victim or party**

**(a) Offense defined.--**A person commits an offense if he harms another by any unlawful act *or engages in a course of conduct or repeatedly commits acts which threaten another in retaliation for anything lawfully done in the capacity of witness*, victim or a party in a civil matter.

18 Pa.C.S.A. § 4953 (emphasis added).

The record supports the trial court's conclusion that Appellant was guilty of retaliation, where Officer Lockhart testified that he had been a witness against Appellant, and was "very concerned" upon learning about threatening verbal and written statements Appellant had made in reference to Detective Lockhart. N.T., 2/6/14, at 10-11.

Given the foregoing, Appellant's sufficiency claims are without merit. We therefore affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/5/2015