J-S39039-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SEAN DONAHUE | : | |
| | : | |
| Appellant | : | No. 1949 MDA 2017 |

Appeal from the Judgment of Sentence September 18, 2017
in the Court of Common Pleas of Luzerne County,
Criminal Division at No(s): CP-40-CR-0003501-2012

BEFORE: STABILE, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                    **FILED AUGUST 22, 2018**

Sean Donahue ("Donahue") appeals from the judgment of sentence imposed following his conviction of terroristic threats. **See** 18 Pa.C.S.A. § 2706(a)(1). Matthew P. Kelly, Esquire ("Attorney Kelly"), Donahue's counsel, has filed a Petition to Withdraw as counsel and an accompanying brief pursuant to **Anders v. California**, 386 U.S. 738, 744 (1967). We grant Attorney Kelly's Petition to Withdraw, and affirm the judgment of sentence.

This Court previously articulated the facts of this matter in **Commonwealth v. Donahue**, 122 A.3d 453 (Pa. Super. 2015) (unpublished memorandum), as follows:

> On 17 August 2012, [Donahue] composed and sent an e-mail to Luzerne County District Attorney Stefanie Salavantis. On 21 August 2012 [], Detective Lieutenant Kenneth Zipovsky [("Detective Zipovsky")] received a request from Chief Frank V. DeAndrea Jr. to investigate the threats that were made by [Donahue] in this e-mail. [Detective Zipovsky] was also advised by Chief DeAndrea that [District Attorney] Salavantis was

concerned and alarmed about the threats that were directed toward her in this email.

In this written communication, [Donahue] threatens that he will essentially engage in a gun fight with police officers, if the District Attorney does not do as he desires. Also in the e-mail, [Donahue] makes the not-so-veiled threat that people will be killed if he does not get the actions that he demands. The text of this e-mail is attached below and is incorporated in this affidavit.

[Donahue] has also continued to send additional e-mails to District Attorney Salavantis since the first communication on 17 August 2012. These additional communications also contain threats of violence toward government employees and police officers. These words and treats have caused terror, and harassed and annoyed [District Attorney] Salavantis. Based on the above facts, I respectfully request that [Donahue] be charged with the violations of terroristic threats and harassment listed in the Criminal Complaint.

ATTACHED E-MAIL FROM [Donahue] ON [17] AUGUST 2012 FOLLOWS—

Dear Luzerne County District Attorney Stephanie Salevantis,[1] [] The firing squad used by police in South Africa against mine workers demanding higher pay that [ was] reported yesterday by CNN, is exactly the kind of threat that was made against me by Corporal Wetzel if I attempt to use the Hazleton Career Link. He made it very clear to me that he will use police power to prevent me from going to that facility. []I am getting tired of you ignoring me and am no longer asking you to stop ignoring me. I am now telling you. The idea that law enforcement thinks that it can use force to take away my rights is unacceptable to me. If you do not respond by telling me that you will investigate the matter, I will prepare myself to face off against a police firing line that will be the result of any attempt by me to use an unemployment office. I will not allow you to let a corporal get away with threatening me with police power. If charges are not

---

[1] The email from Donahue was sent to twenty-one people, including federal, state, and local officials, as well as members of the press, with the subject line "Harassment and Conspiracy Complaints against Corporal Wetzel and others." **Donahue**, 122 A.3d at 2, n.2 (citation omitted).

brought against Corporal Wetzel, Elaine Stalfa, their security guard, Alan Smith, Lucy Ann Veirling and the employees in Harrisburg responsible for illegally denying me access to my rights, I WILL Re-SECURE MY RIGHTS in my capacity as a citizen soldier at large. Because you have allowed a law enforcement officer to wrongfully threaten me with the wrongful use of force and false arrest, despite my not having committed a crime, I must anticipate that the corporal and the Hazleton Career Link Staff will follow through on their threat to use force to prevent me from accessing an unemployment office and to prevent me from making them do their jobs. I will prepare myself to defend myself against these threats and police reinforcements. [] As it stands now, the only people trying to avoid going into a courtroom over this matter are the Hazleton Police Department, the Hazleton Career Link Workers, the PA Department of Labor and Industry, the US DOL, the L/S WIB and you, the DA. The very person who is supposed to intervene and see to it that societies [*sic*] troubles are brought before a jury and judge. Now, your [*sic*] allowing an officer and Career Link workers to use threats of wrongful use of force as a means of taking my rights away triggers the use of the US Second Amendment and Section 13 of the PA Constitution. I consider you to be an illegal oppressive force that has repeatedly threatened the use of both false arrest and physical police force to prevent me from using the Hazleton Career Link and to prevent me from making the Career Link Workers, the Workforce Investment Board Workers and the PA L&I workers do their jobs. I have exhausted all possible peaceful means to resolve this problem and my every attempt has been repeatedly ignored. [] When asked by Judge Zola on February 2, 2011, is anyone preventing me form [*sic*] using the Career Link, Elaine Stalfa and Herbert Alan Smith testified, under oath; "No". Judge Zola said that because I did not attempt to physically go there, I cannot claim that I am being physically kept out of the facility and he further claimed that I misinterpreted the situation. However, I did not misinterpret the situation, Elaine Stalfa and Herbert Alan Smith lied under oath. In so doing, they perjured themselves. The entire hearing took place in front of three Hazleton Police Officers who heard the entire thing. After the hearing was over, I was told by Career Link workers that I had pissed people off and that they were told by their boss, Stalfa and Vierling, that they would be fired if they assisted me in any way in gaining employment. A separate workforce counselor in Philadelphia was told the same thing. Anyone caught assisting me will be fired. [] I was told by Career Link workers that they were backed by the FEDS. I then applied

to the Federal DOL to test this theory and was offered a job in Washington that I cannot afford to take. I have been told by a trooper that specific people in government have it in for me and that is all there is to it. I can do nothing other than leave Pennsylvania. I have been told by Career Link Workers several times that I am to be barred from employment in our county and that I must leave and start a new life elsewhere. [] I fought to get something in writing but the Erica Koub, of Corbett's office, refused to provide any documentation and just insisted that an executive Pennsylvania Decision had been made to deny me access to services. Yudichack's office secured a letter from PA L&I GC who stated the denial of access to federally funded Career Link services is in retaliation for having filed charges against Elaine Stalfa and for contacting the Secretary of L&I, which she feels is not my place to do. [] This is ILLEGAL. This is Harassment. This is Official Oppression. This complaint is falling on deaf ears. Therefore, I will ring the bell that is heard around the world and your summary denial of my rights will be physically challenged. I will not stand there and die at the hands of a corporal or any other officers in a firing line intended to keep me from using my rights. [] "Give me Liberty or Give me Death" but not necessarily my own! [] You have until COB Monday Morning to assure me that I will be given access to services, that the Career Link will do its job, that charges will be filed against Corporal Wetzel, Elaine Stalfa, Alan Smith, the Career Link Security guard and both Frank DeAndrea and Rpbert Ferdinand. You have denied me access to democracy. You have denied me access to the services available through the executive branch of government, the legislature has denied me access to relief through the legislative branch of government and the judicial branch of government has denied me access to relief through its channels. You are conspiring to create a circumstance that enables you to get me on something. The Magistrate says that I must actually physically go to the Career Link and the corporal and Career Link staff say that I will be arrested for something if I attempt to do so. You then ignore my every email complaint to resolve the matter peacefully and you do so just so that you can put me into a position that forces me to be the physical aggressor and approach a police station or a government office. That is why you won't act on an e-mail. You are trying to set me up and the magistrate is assisting. It is a coordinated conspiracy and Judge Zola is part of it. You are trying to trap me just like you try to trap drug dealers and other criminals. In doing so, you are harassing me. [] PA L&I, Corporal Wetzel, Elaine Stalfa and Vierling have taken upon themselves to

- 4 -

label me an enemy of the state of PA and repeatedly conducted their business as if they are backed by the FEDS. Things have been repeatedly altered and moved around in my home, as if someone had entered. Yet, noting [*sic*] was stole[n], [t]hat is intel collection, not burglary. [] Absolutely no one from any level of law enforcement may contact me without a warrant from a judge to do so. There was an article in the paper about an overstuffed arms locker under the control of the Luzerne County Sheriff. I want the sheriff to tell me how I can take ownership of a weapon and protective gear from the county arms locker. I want the FBI to provide me with a vest, kevlar plates and kevlar helmet. I want the FBI or some other federal law enforcement agency to order the Hazleton Police Department and all other local law enforcement to not approach me without first coordinating with federal officers and I want all federal officers to be ordered to inform me anytime local law enforcement intends to act. [] Law Enforcement may only contact me through my attorney and I will only have an attorney when Judge Zola orders that one be appointed to represent me in this string of matters. The FBI may ship the Kevlar items and accompanying webbing and vest via UPS. It may not include electronic surveillance devices, I forbid it. The sheriff may deliver two weapons and associated equipment and ammunition. One weapon must be a US manufactured black rifle, 7.62 and other must be a 45 pistol. The sheriff must also grant me an exception to test-fire the weapons into the ground or into a barrel filled with dirt or water. The sheriff must grant me an exception, allowing me to jog and walk the streets with the gear and weapons when I leave the house and all law enforcement must be told to stay away from me. Law enforcement is bound by the US constitution to enable me to defend myself from the wrongful threat of the use of physical force and wrongful arrest and imprisonment. IT IS THEIR DUTY!!!! I EXPECT THEM TO CARRY IT OUT!!! [] Sincerely, [] Sean M. Donahue

*Id.* (unpublished memorandum at 2-7) (citing Aff. of Probable Cause, 8/21/12, at 1-3) (footnote added, footnotes omitted, emphasis in original).

The Commonwealth charged Donahue with terroristic threats and harassment. The police executed a search warrant on Donahue's home and seized, *inter alia*, several computer devices and a "Winchester Mod 94 30-30"

rifle from under a bed. Thereafter, Donahue filed for writ of *habeas corpus* to dismiss the charges.

On October 28, 2013, the trial court dismissed the charges, and the Commonwealth filed an appeal. This Court affirmed the trial court's dismissal of the harassment charge, reversed the dismissal of the terroristic threats charge, and remanded the matter to the trial court. **See Donahue**, 122 A.3d 453.

On July 10, 2017, a jury found Donahue guilty of terroristic threats. On September 18, 2017, the trial court sentenced Donahue to 120 days to twenty-three months in jail, with 280 days credit, and he was immediately paroled. Thereafter, Attorney Kelly was appointed as Donahue's conflict counsel. On September 27, 2017, Donahue filed a Post-Sentence Motion, which the trial court denied.

Donahue filed a timely Notice of Appeal and a court-ordered Concise Statement pursuant to Pa.R.A.P. 1925(b).

Attorney Kelly has filed a brief, pursuant to **Anders**, that raises the following issues on appeal:

1) Whether the court erred in failing to grant [Donahue's] Pre-Trial Motion challenging the validity of the search warrant[?]

2) Whether the evidence was sufficient as a matter of law to establish guilty beyond a reasonable doubt to the charge of Terroristic Threats[?]

3) Whether the trial court abused its discretion in failing to sentence [Donahue] to time served rather than being paroled[?]

*Anders* Brief at 1.  Attorney Kelly also filed a Petition to Withdraw as counsel, and Donahue filed multiple *pro se* responses to Attorney Kelly's *Anders* brief.

Before addressing Donahue's issues on appeal, we must determine whether Attorney Kelly has complied with the dictates of *Anders* and its progeny in petitioning to withdraw from representation.  *See Commonwealth v. Burwell*, 42 A.3d 1077, 1083 (Pa. Super. 2012) (holding that counsel who petitions to withdraw from representation must comply with *Anders* and its progeny).  Pursuant to *Anders*, when counsel believes that an appeal is frivolous and wishes to withdraw from representation, he or she must

> (1) petition the court for leave to withdraw[,] stating that after making a conscientious examination of the record and interviewing the defendant, counsel has determined the appeal would be frivolous, (2) file a brief referring to any issues in the record of arguable merit, and (3) furnish a copy of the brief to defendant and advise him of his right to retain new counsel or to raise any additional points that he deems worthy of the court's attention.  The determination of whether the appeal is frivolous remains with the appellate court.

*Id*.  Additionally, the Pennsylvania Supreme Court has explained that a proper *Anders* brief must

> 1) provide a summary of the procedural history and facts, with citations to the record;
>
> 2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> 3) set forth counsel's conclusion that the appeal is frivolous; and

> 4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Commonwealth v. Santiago***, 978 A.2d 349, 361 (Pa. 2009).

Here, we conclude that Attorney Kelly has substantially complied with each of the requirements of ***Anders***. ***See Commonwealth v. Wrecks***, 934 A.2d 1287, 1290 (Pa. Super. 2007) (stating that counsel must substantially comply with the requirements of ***Anders***). In his ***Anders*** brief, Attorney Kelly indicated that he made a conscientious examination of the record and determined that an appeal would be frivolous. Further, Attorney Kelly's ***Anders*** brief comports with the requirements set forth in ***Santiago***. Moreover, the record contains a copy of the letter that Attorney Kelly sent to Donahue, which indicated Attorney Kelly's intention to seek permission to withdraw, and which advised Donahue of his right to proceed *pro se*, retain alternate counsel, or file additional claims. Thus, Attorney Kelly has complied with the procedural requirements for withdrawing from representation. We next examine the record to make an independent determination of whether Donahue's appeal is, in fact, wholly frivolous.

Donahue's first claim alleges that the trial court erred in failing to grant his pre-trial Motion challenging the validity of the search warrant obtained by law enforcement to search Donahue's home. ***Anders*** Brief at 7. Donahue claims that the district judge signed the warrant to search his home after the search of his home was actually conducted. ***Id.*** at 8. Donahue also claims

that the trial court should have granted his pre-trial motion, because the officers who performed the search used excessive and coercive conduct. *Id.*

Our standard of review when addressing a challenge to a trial court's denial of a suppression motion is

> whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the ruling of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Eichinger*, 915 A.2d 1122, 1134 (Pa. 2007) (citations omitted).

Here, the district judge denied "backtiming" the warrant. *See* Trial Court Opinion and Order, 7/10/17, at 2 (unnumbered). Although Donahue testified that he overheard an officer tell the district judge that the officer needed a signed warrant because the police had only conducted a cursory search, and that he observed the district judge execute the search warrant by "rubber stamping" the warrant after the search, the suppression court was free to reject Donahue's testimony. N.T., 6/26/17, at 94-98; *see Commonwealth v. Gallagher*, 896 A.2d 583, 585 (Pa. Super. 2006) (stating, "[i]t is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony.") (citations and quotation marks omitted). Further, the

Commonwealth did not present any evidence obtained from the search of Donahue's home. *See* Trial Court Opinion and Order, 12/1/17, at 1 (unnumbered). Therefore, the trial court did not err in denying Donahue's pre-trial Motion to invalidate the search warrant.

In Donahue's second claim, he contends that the evidence was insufficient to support the terroristic threats conviction, because there is no proof that he intended to terrorize the victim, nor did his conduct pose a true threat. ***Anders*** Brief at 9; ***see also id.*** at 10 (arguing that he never threatened another person.) Donahue argues that his right to free speech is constitutionally protected. ***Id.***

We apply the following standard of review when considering a challenge to the sufficiency of the evidence:

> The standard we apply in reviewing the sufficiency of the evidence is whether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Melvin***, 103 A.3d 1, 39-40 (Pa. Super. 2014) (citation omitted).

> The Crimes Code defines terroristic threats as follows, in relevant part:
>
> (a)  A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to:
>
> (1)  Commit any crime of violence with intent to terrorize another.

18 Pa.C.S.A. § 2706(a)(1).

> This Court has held that:
>
> [t]he elements necessary to establish a violation of the terroristic threats statute are: (1) a threat to commit a crime of violence; and (2) that the threat was communicated with the intent to terrorize or with reckless disregard of the risk of causing such terror.  Section 2706 defines the word, "communicates," to mean "conveys in person or by written or electronic means . . . ."

***Commonwealth v. Vergilio***, 103 A.3d 831, 833 (Pa. Super. 2014) (citations omitted).  "Neither the ability to carry out the threat, nor a belief by the person threatened that the threat will be carried out, is an element of the offense."

***Commonwealth v. Reynolds***, 835 A.2d 720, 730 (Pa. Super. 2003) (citation omitted).  "[I]t is unnecessary for an individual to specifically articulate the crime of violence which he or she intends to commit where the type of crime may be inferred from the nature of the statement and the context and circumstances surrounding the utterance of the statement." ***Commonwealth v. Martinez***, 153 A.3d 1025, 1028 (Pa. Super. 2016).  "[T]he harm sought to

be prevented by the statute is the psychological distress that follows from an invasion of another's sense of personal security." **Reynolds**, 835 A.2d at 730.

At trial, District Attorney Salavantis testified that Donahue's email frightened her. N.T., 7/10/17, at 106. Moreover, a CareerLink employee, Elaine Stalfa ("Stalfa"), testified that she received the above-mentioned email. **Id.** at 63. Stalfa testified that she and her coworkers were scared of Donahue. **Id.** at 62. Stalfa further testified that the decision to hire armed guards at two CareerLink sites was strongly based on fear of Donahue. **Id.**

Viewing this evidence in a light most favorable to the Commonwealth, Donahue committed terroristic threats when he sent the above-captioned words via email to District Attorney Salavantis and other government officials. Donahue's email, in context of Donahue's ongoing dissatisfaction with CareerLink and other governmental agencies, supports the inference that Donahue would arm himself and assault or shoot police officers or other government officials at a police station or a government office. Indeed, Donahue used violent imagery, referred to possible physical confrontations with government officials, and indicated his right to use force against a government conspiracy. Thus, the evidence presented at trial was sufficient to sustain a charge of terroristic threats. **See Commonwealth v. Butcher**, 644 A.2d 174, 176 (Pa. Super. 1994) (sustaining a terroristic threats conviction where, "[a]lthough appellant did not identify any specific crime of violence as the object of his threat, when his words and conduct are viewed

in context, appellant's statement to the victim, '[d]on't make me get physical,' could reasonably be interpreted as a threat to assault the victim if she did not give appellant a ride as he had demanded."); *see also Commonwealth v. Fenton*, 750 A.2d 863, 865 (Pa. Super. 2000) (stating that evidence sufficient to support terroristic threats conviction where appellant "clearly spent a long time reflecting upon his frustrations, and his threats [could not] be characterized as less than premeditated and deliberate.").

In his third claim, Donahue contends that the trial court abused its discretion in imposing an aggravated range sentence. *Anders* Brief at 3, 12-13. Donahue argues that the trial court should have imposed a sentence of time served, since Donahue served the statutorily mandated minimum sentence. *See id.* at 12. Donahue challenges the discretionary aspects of his sentence.

> An appellant challenging the discretionary aspects of the sentence must invoke this [C]ourt's jurisdiction by satisfying a four-part test:
>
> (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether the appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).
>
> ***
>
> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's action were either: (1) inconsistent

- 13 -

with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010) (quotation marks and some citations omitted).

Here, Donahue filed a timely Notice of Appeal, raised his claims in a timely Post-Sentence Motion, and included a Rule 2119(f) Statement in his brief. In his Rule 2119(f) Statement, Donahue asserts that "[t]he trial court sentenced [Donahue] to a term of parole in the aggravated range rather than for time served." *Anders* Brief at 3. Donahue's bald claim does not raise a substantial question. *See Moury*, 992 A.2d at 170 (stating, "this Court does not accept bald assertions of sentencing errors. An [a]ppellant must articulate the reasons the sentencing court's actions violated the sentencing code.") (citations omitted). Thus, Donahue's claim is not preserved for our review.

Nevertheless, *Anders* requires that we examine the merits of Donahue's sentencing claim to determine whether the appeal is, in fact, wholly frivolous. *See Commonwealth v. Lilley*, 978 A.2d 995, 998 (Pa. Super. 2009) (stating that where counsel files an *Anders* brief, this Court will review discretionary aspects of sentencing claims that were otherwise not properly preserved).

Our standard of review is as follows:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its

judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Mastromarino*, 2 A.3d 581, 589 (Pa. Super. 2010) (citation omitted).

At sentencing, the trial court imposed the aggravated-range sentence based upon Donahue's lack of remorse for the mental anguish suffered by the victims. N.T., 9/18/17, at 3. Moreover, the trial court considered the fact that Donahue had been convicted of another crime in Dauphin County during the proceedings of the instant case. *Id.* Further, the trial court noted that Donahue had served his minimum sentence, and was immediately paroled. *Id.* at 2. Thus, we discern no abuse of discretion by the trial court in imposing the sentence.

Further, Donahue has filed numerous *pro se* responses raising a variety of claims. Donahue's responses include numerous attachments, including pictures of massacre victims in Africa, newspaper clippings, and an abundant amount of email communications. Upon our review of Donahue's *pro se* responses, there is no merit to his claims.

Moreover, our independent review of all the proceedings discloses no other non-frivolous issues that Donahue could raise on appeal. *See Commonwealth v. Dempster*, 187 A.3d 266, 273 (Pa. Super. 2018) (*en banc*). Accordingly, we grant Attorney Kelly's Petition to Withdraw and affirm Donahue's judgment of sentence.

Petition to Withdraw granted; judgment of sentence affirmed. Application to Quash Appeal denied.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/22/2018