J-S79003-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                                                   :  PENNSYLVANIA
                                                   :
              v.                               :
                                                   :
TORRENCE A. ALLEN                    :
                                                 :
              Appellant              :  No. 840 MDA 2018

Appeal from the Judgment of Sentence April 24, 2018
In the Court of Common Pleas of Lackawanna County Criminal Division at
No(s):  CP-35-CR-0002118-2017

BEFORE:  SHOGAN, J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY SHOGAN, J.:  **FILED: MARCH 27, 2019**

Appellant, Torrence A. Allen, appeals from the judgment of sentence entered on April 24, 2018, in the Lackawanna County Court of Common Pleas. We affirm.

The relevant facts and procedural history of this matter were set forth by the trial court as follows:

> At [a nonjury] trial, the Commonwealth called Mrs. Bonnie Wolo, the alleged victim in the case. (N.T. 3/20/18 at p. 18). Mrs. Wolo explained that she had a long history with [Appellant]. During the course of their romance, there were numerous occurrences of domestic violence. Specifically, she recalled an incident in June of 2017 where [Appellant] became angry over smashing his thumb. She testified that he grabbed her by her hair and started yelling at her over the injury. (N.T. 3/20/18 at p. 23-24). She also described another incident that occurred sometime around July 4, 2017. An argument ensued over [Appellant's] daughter's boyfriend. She testified [Appellant] struck her on the right side of her face. (N.T. 3/20/18 at p. 25).

On September 12, 2017, the date the incident took place, Mrs. Wolo [testified] that she and [Appellant] had been home and he had been drinking. (N.T. 3/20/18 at p. 28). She was making dinner and at some point, [Appellant] became upset and began screaming at her. He started throwing dishes and food across the room. (N.T. 3/20/18 at p. 32). He proceeded to push her and she walked away, continuing to prepare dinner. (N.T. 3/20/18 at p. 27-30-31). After dinner, the argument became physical with [Appellant] grabbing her by the hair, causing her to be pulled off the ground and leaving her with patches of hair missing from her scalp. (N.T. 3/20/18 at p.39). [Appellant] then pulled her down and hit her head off his leg. She testified she lost her partial dental plate due to the impact (N.T. 3/20/18 at p.39).

Mrs. Wolo called 911 and stood outside to wait for the police officers to arrive. (N.T. 3/20/18 at p. 44). Officers Brett Griffiths and John Cantafio arrived at the residence. After speaking with the victim, the officers went into the residence and spoke to [Appellant]. (N.T. 3/20/18 at p. 44-46).

The Commonwealth called Officers Griffiths and Cantafio as witnesses. [Officer] Griffiths testified that he met with Mrs. Wolo who gave him a statement of what occurred, relaying the incidents of the evening. (N.T. 3/20/18 at p. 114). Officer Cantafio testified that Mrs. Wolo had informed him of her missing partial dental plate. (N.T. 3/20/18 at p. 141). She told the officer that she might have swallowed it or maybe it was on the living room floor. He went inside and looked for it but could not find it. (N.T. 3/20/18 at p. 142). The Commonwealth called two more witnesses, Ashley Wolo, and Bonnie Wolo, daughters of the victim. They both testified about events that transpired after the alleged assault.

[Appellant] testified in his own defense. (N.T. 3/20/18 at p. 174). He testified that he started dating Mrs. Wolo after she wrote him letters while he was in the Lackawanna County Prison. (N.T. 3/20/18 at p. 175). [Appellant] stated that his relationship with Mrs. Wolo ended in May 2017, even though they were still living together in September when this incident happened. (N.T. 3/20/18 at p. 182). He stated that they would argue about frivolous things, but denied ever hitting Mrs. Wolo. (N.T. 3/20/18 at p. 180). Specifically, he stated he never pulled her hair or slapped her. (N.T. 3/20/18 at p. 181). He testified that at the time of the incident he was planning on moving out because Mrs. Wolo

was threatening to call his parole officer to get him in trouble. (N.T. 3/20/18 at p. 182).

With respect to the events of September 12, 2017, [Appellant] stated he helped Mrs. Wolo with the dishes. (N.T. 3/20/18 at p. 188). He then passed out after working 16 hours on that day. (N.T. 3/20/18 at p. 189). He claims he never called her into the living room, never pulled her hair, and never grabbed her to pull her down to his leg (N.T. 3/20/18 at p. 190). He also stated he never threw chairs or anything in the kitchen as depicted in pictures submitted into evidence and through the testimony of the witnesses. (N.T. 3/20/18 at p. 191).

At the conclusion of the testimony, this court entered an order finding [Appellant] guilty of the single count [of] summary harassment.[1]

Trial Court Opinion, 8/20/18, at 1-3. On May 16, 2018, Appellant filed a timely notice of appeal. Both the trial court and Appellant complied with Pa.R.A.P. 1925.

On appeal, Appellant raises the following issues for this Court's consideration:

I. Whether there was sufficient evidence and whether the verdict was against the weight of the evidence to support the trial court's finding of Harassment as the Commonwealth did not prove beyond a reasonable doubt that [Appellant] committed Harassment?

II. Did the trial court err in allowing undocumented/unreported prior incidents of domestic violence/assaultive behavior with regard to the alleged victim to be considered by the finder of fact, under Rule of Evidence 404(b)?

_____

[1] 18 Pa.C.S. § 2709(a)(1).

Appellant's Brief at 4.[2]

In his first issue on appeal, Appellant avers that the evidence was insufficient to prove the offense of harassment beyond a reasonable doubt.[3] Appellant avers that the Commonwealth did not establish intent. Appellant's Brief at 10. We disagree. Our standard for review of a sufficiency-of-the-evidence claim is as follows:

> When presented with a claim that the evidence was insufficient to sustain a conviction, an appellate court, viewing all of the evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth as the verdict winner, must determine whether the evidence was sufficient to enable the fact-finder to find that all elements of the offense were established beyond a reasonable doubt.

**Commonwealth v. Woody**, 939 A.2d 359, 361 (Pa. Super. 2007) (citation omitted). Additionally, "[t]he Commonwealth may sustain its burden by

---

[2] In his brief, Appellant challenged the admissibility of testimony under Pa.R.E. 404(b) first, and he then raised the challenge to the sufficiency of the evidence. We have renumbered these issues because when we address the sufficiency of the evidence, we must consider all of the testimony presented during the trial, without consideration as to its admissibility. **Commonwealth v. Sanford**, 863 A.2d 428, 431-432 (Pa. 2004). A review of the sufficiency of the evidence is not assessed on a diminished record; where improperly admitted evidence has been allowed to be considered by the factfinder, its subsequent deletion does not justify a finding of insufficient evidence. The remedy in such a case is the grant of a new trial. **Id.**

[3] In his statement of questions presented, Appellant also asserts that the verdict was against the weight of the evidence. However, in the argument portion of his brief, Appellant addresses only the sufficiency of the evidence. Accordingly, Appellant has waived his challenge to the weight of the evidence by failing to present an argument in support thereof. **Commonwealth v. Woodard**, 129 A.3d 480, 509 (Pa. 2015).

proving the crime's elements with evidence which is entirely circumstantial and the trier of fact, who determines credibility of witnesses and the weight to give the evidence produced, is free to believe all, part, or none of the evidence." *Id.* (quoting **Commonwealth v. Brown**, 701 A.2d 252, 254 (Pa. Super. 1997)).

Harassment is defined, in relevant part, as follows:

**(a) Offense defined.--**A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person:

> (1) strikes, shoves, kicks or otherwise subjects the other person to physical contact, or attempts or threatens to do the same;

18 Pa.C.S. § 2709(a)(1).

As noted, Appellant alleges that the Commonwealth failed to establish an intent to harass. In addressing the interpretation of the statutory phrase "with intent to harass," this Court has stated as follows:

The law does not permit an actor to avoid the consequences of his conduct by disclaimers of an intent to injure or harm or offend or "harass." Rather, the law obliges the factfinder to rely for the discernment of intent upon demonstrative manifestation of that intent. Every action produces a reaction, every act has an effect. The nature or essence of an act is most often, and usually convincingly, determined by its effect or result. When an individual knows or should know the consequences of his act, he is presumed to be aware of the nature of his act, and his decision to perform the act is a manifestation of his intent to effect the results of his act. The assigned task of the [factfinder] was to determine whether appellant knew or should have known that an effect of his [actions] would be to harass the [the victim].

- 5 -

*Commonwealth v. Hart*, 559 A.2d 584, 587 (Pa. Super. 1989) (quoting

*Commonwealth v. Kozinn*, 552 A.2d 1096, 1098 (Pa. Super. 1989)).

In the case at bar, the evidence established that Appellant screamed at Mrs. Wolo, threw dishes and food across the room, pushed her, lifted her off the floor by her hair causing patches of her hair to come out of her scalp, pulled her head down, and hit her head off his leg. N.T., 3/20/18 at 27-39. Appellant's attack on Mrs. Wolo caused her to lose her dental plate due to the impact. *Id.* at 39. In light of our standard of review, we conclude that the the Commonwealth established every element of harassment, including intent, beyond a reasonable doubt.

Finally, Appellant challenges the admissibility of evidence under Pa.R.E. 404(b). Appellant argues that the trial court abused its discretion in allowing Mrs. Wolo to testify regarding two prior instances of alleged domestic violence. As noted above, Mrs. Wolo testified that in June of 2017, Appellant became angry after he hurt his thumb moving a refrigerator, and he grabbed her by her hair and started yelling at her about his injury. N.T., 3/20/18, at 23-24. Mrs. Wolo also testified about an argument she had with Appellant in July of 2017 regarding Appellant's daughter's boyfriend. *Id.* at 25. Mrs. Wolo explained that this argument culminated in Appellant striking her on the right side of her face. *Id.*

Our standard of review is well settled:

The admissibility of evidence is solely within the discretion of the trial court and will be reversed only if the trial court has abused

its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

*Commonwealth v. Biesecker*, 161 A.3d 321, 329-330 (Pa. Super. 2017) (citation omitted).

At the outset, it is axiomatic in a criminal trial that all evidence offered by the prosecution will be prejudicial to the defendant. *Commonwealth v. Peer*, 684 A.2d 1077, 1083 (Pa. Super. 1996). Under the Pennsylvania Rules of Evidence, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). However, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice." Pa.R.E. 404(b)(2). "To be admissible under this exception, there must be a specific logical connection between the other act and the crime at issue which establishes that the crime currently being considered grew out of or was in any way caused by the prior set of facts and circumstances." *Biesecker*, 161 A.3d at 330 (internal citation and quotation marks omitted). The Pennsylvania Supreme Court has also recognized the *res gestae* exception that permits the admission of evidence of other crimes or bad acts to tell the

complete story. **Commonwealth v. Hairston**, 84 A.3d 657, 665 (Pa. 2014) (internal quotations and citation omitted).  Moreover, the trial court is not "required to sanitize the trial to eliminate all unpleasant facts from … consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged[.]"  **Commonwealth v. Lark**, 543 A.2d 491, 501 (Pa. 1988).  Finally, "it is presumed that a trial court, sitting as fact-finder, can and will disregard prejudicial evidence."  **Commonwealth v. Fears**, 86 A.3d 795, 819 (Pa. 2014) (citation omitted).

After review, we conclude there was no abuse of discretion in the trial court's decision.  The Pennsylvania Supreme Court has explained that evidence of prior bad acts is admissible where the distinct crime or bad act "was part of a chain or sequence of events which formed the history of the case and was part of its natural development."  **Commonwealth v. Drumheller**, 808 A.2d 893, 905 (Pa. 2002).  In **Drumheller**, evidence of the appellant's prior incidents of domestic violence was admitted at trial.  This evidence revealed that the appellant repeatedly assaulted his former girlfriend, Carol Huttenstine, and these incidents occurred during the three years preceding the date when the appellant ultimately stabbed Ms. Huttenstine to death.  **Id.**  Our Supreme Court concluded that the evidence of prior violence revealed "the chain or sequence of events that formed the history of the case, is part of the natural development of the case, and

demonstrate[d the appellant's] motive, malice, intent, and ill-will toward [Ms.] Huttenstine." ***Id.***

The trial court concluded as follows:

> Similar to <u>Drumheller</u>, this court found that [Appellant's] prior incidents of abuse were admissible pursuant to rule 404(b) because they permitted the Commonwealth to establish the continuing and escalating nature of [Appellant's] abuse toward [Mrs. Wolo] as part of a connected series or chain of events that led up to the September 12, 2017 incident.

Trial Court Opinion, 8/20/18, at 5-6. We agree with the trial court.

The evidence at issue provided the complete story in this case, and we conclude this testimony was more probative than prejudicial. Mrs. Wolo's testimony concerning the prior incidents of violence revealed the escalating violence to which Appellant subjected her. The prior acts illustrated physical violence similar to the September 12, 2017 incident, which included Appellant pulling Mrs. Wolo's hair and striking her in the head. Pursuant to our standard of review, we discern no abuse of discretion in the trial court admitting this testimony into evidence under Pa.R.E. 404(b).

For the reasons set forth above, we conclude that Appellant is entitled to no relief. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 03/27/2019